STATE OF SOUTH DAKOTA, Respondent, v. NICHOLAS, Appellant.

(253 N. W. 737.)

(File No. 7505. Opinion filed March 19, 1934.)

*Hayes & Hayes,* of Deadwood, for Appellant.

*Walter Conway,* Attorney General, *James Brown,* Assistant Attorney General, and *Clinton G. Richards,* State's Attorney, of Deadwood, for the State.

RUDOLPH, J. The information under which the defendant was tried and convicted contained four separate counts. Count 1 charged the defendant with manslaughter in the first degree, alleging that, while the defendant was engaged in the commission of the misdemeanor of driving his automobile on a public highway, carelessly and heedlessly with willful and wanton disregard of the rights and safety of others and without due caution and circumspection and at a speed and in a manner so as to endanger and as to be likely to endanger persons and property, killed Mrs. Fern Waugh. Count 2 of the information charged manslaughter in the first degree in the killing of Mrs. Waugh while engaged in the misdemeanor of transporting liquor on a public highway in the state. Count 3 charged manslaughter in the second degree, alleging that the defendant was culpably negligent in the driving of

his automobile upon the public highway and, as a result thereof, killed Mrs. Fern Waugh. Count 4 charges the defendant with failing to immediately stop his automobile at the scene of the accident contrary to the provisions of section 30 of chapter 251 of the Laws of 1929. The defendant was found guilty upon counts 1, 2, and 4, and sentenced to ten years in the penitentiary under each of the first two counts and five years under the fourth count, the sentences to run concurrently. Defendant has appealed.

The evidence discloses that on the evening of July 8, 1931, shortly after 6 o'clock in the evening, the defendant and three other young men left Rapid City in the defendant's automobile with the defendant driving and went to Spearfish. Shortly before leaving Rapid City, one of this party had obtained twelve bottles of beer, a part of which was consumed on the way to Spearfish. The party arrived at Spearfish between 8 and 8:30 o'clock in the evening, and the defendant stopped his car at a restaurant where his three companions got out. Defendant stated to his companions that he would meet them at the dormitory of the Spearfish Normal School. He stated that he was in a hurry to get up to the school that he might be on time for an engagement he had with a girl there by the name of Arlie Goff. The purpose of the trip to Spearfish was to attend a dance to be held there that night, and the four young men were planning on taking girls from the normal school to the dance.

Shortly after the defendant left the restaurant, and on the road between the restaurant and the normal school, Mrs. Fern Waugh was struck by an automobile and died shortly thereafter. Three men returning from a fishing trip were eyewitnesses to the accident. These men testified that, as they were coming toward Spearfish, they observed a car with its lights on coming toward them. When about 150 feet from this car that was approaching them, they saw it strike a woman and hurl her into the air. The car in which the three men were riding was immediately stopped at the place of the accident, one of the men got out of the car to give such aid as was possible to the victim, the car was turned around in the road, and an attempt was made to follow the car which had struck the woman. This attempt was unsuccessful because of the speed with which the car that struck the woman left the scene of the accident, and the time lost in making the turn in the road.

These three men all testified that the car belonging to the defendant had the same general appearance of the car that they saw strike Mrs. Waugh. They further testified that this car after it struck Mrs. Waugh did not stop, but, after being slowed down somewhat on account of the impact, immediately took on speed and left in a hurry.

The evidence further discloses that the three young men, who were left at the restaurant, took a bus to the normal school, and upon arriving there met four girls who were attending the normal school, among them Arlie Goff. The young men took the four girls to the dance, and after they were at the dance about an hour the defendant came in. After the dance they all went back to the normal school in a bus, the boys returned to Spearfish and to the home of the defendant's mother where they found the defendant's car. The radiator and the hood of the car were considerably damaged. The radiator was damaged to the extent that it was pushed back from its original position several inches and would not hold water any length of time. The right headlight was smashed and the front bumper was bent. The four returned to Rapid City in this car, but it was necessary that they stop along the way any number of times and fill the radiator with water.

The morning following this accident the defendant was arrested at Rapid City and thereafter taken to Deadwood and placed in jail. About 8 o'clock in the evening of the 10th of July, the defendant was taken to the sheriff's office, and there, according to the testimony of the sheriff, the defendant admitted his guilt and said:

"If you will give me a piece of paper I will draw you a diagram of where I started from, where I hit her, and where I went."

A diagram was drawn, which was thereafter torn into pieces by the defendant and thrown into the waste basket, from which the pieces were later taken, pasted together, and introduced in evidence in the case. The first and really major contention of the defendant is that this confession made to the sheriff was involuntarily made as the result of fear and coercion, and induced by promises of benefit and threats, and was therefore inadmissible. We will consider first this contention of the defendant.

When the sheriff was first asked as a witness to detail his conversation with the defendant, objection was made and there-

upon the jury was excused and the sheriff examined and cross-examined relative to whether the statements and admissions of the defendant were voluntary or made because of threats or promises of benefit. The defendant was also examined and gave his version of the conversation had with the sheriff. After hearing this evidence, the court indicated that the evidence of the sheriff would be received, and stated, "The defendant will be permitted, if he desires, to submit the evidence of the circumstances under which the statements were made before the jury, and have the jury pass upon the question." The jury was recalled and over objection the sheriff gave his testimony. The sheriff was cross-examined in detail as to the circumstances under which the statements of the defendant were made, and the defendant was permitted, in the presence of the jury, to again give his version of the circumstances under which the statements were made. In submitting the case to the jury, the court instructed that, before considering the admissions made by the defendant as testified to by the sheriff, the jury "must be satisfied from the evidence and beyond a reasonable doubt that they were given freely and voluntarily and that they were not obtained by direct or implied promises."

The procedure followed by the trial court was right and proper under the established laws of this state. In the case of State v. Montgomery, 26 S. D. 539, 128 N. W. 718, 719, this court said:

"In the case of State v. Allison, 24 S. D. 622, 124 N. W. 747, this court said: 'If the evidence submitted to the court should be conflicting, leaving in the mind of the court any question as to the competency of such confession, then the question of such competency should be submitted to the jury, by recalling the witnesses and examining them on this point in the presence of the jury.' That is precisely what was done in this case. It may be proper for the court, instead of the jury, as most frequently is the case, to decide the question of the voluntariness of the confession, and whether or not the court or jury should pass upon any particular case would be to a large extent within the sound discretion of the trial court."

See, also, State v. Phelps, 5 S. D. 480, 59 N. W. 471; Territory v. Egan, 3 Dak. 119, 13 N. W. 568; State v. Vincent, 16 S. D. 62, 91 N. W. 347; State v. Landers, 21 S. D. 606, 114 N. W. 717; State v. Vey, 21 S. D. 612, 114 N. W. 719; State v. Allison, 24

S. D. 622, 124 N. W. 747; State v. Barclay, 46 S. D. 129, 191 N. W. 186; 16 C. J. 717.

■ No useful purpose would be gained in attempting to detail the circumstances as testified to by the sheriff and the defendant under which the statements were made by the defendant. Sufficient to say is that we have carefully considered all of this testimony, which is set out at length in the briefs, and conceding that the testimony of the defendant standing alone would be sufficient to make his admissions to the sheriff involuntary (as that term is used in connection with admissions or confessions), the sheriff's testimony, on the other hand, shows the admissions to have been voluntarily and freely made. There can be no fixed rule by which to determine whether a confession is voluntary or involuntary, this must be decided upon the facts peculiar to the case and the circumstances under which it was made; we are satisfied there was no error in submitting this question to the jury.

■ The appellant questions the sufficiency of the evidence to sustain a conviction. We will consider this contention first in so far as the conviction under count 4 is concerned. Much of the argument of counsel for appellant is bottomed upon the contention that the admissions of the defendant to the sheriff were not a proper subject for the consideration of the jury and that without these admissions the evidence was not sufficient to sustain a conviction under this count. Having held that the admissions of the defendant were properly submitted to the jury, the evidence is, without question, in our opinion, sufficient to sustain the conviction under count 4. The confession, together with the condition of the car before and after the accident, the testimony of the three men returning from the fishing trip, and many other facts and circumstances which are not necessary to detail all point to the fact (if in fact they do not establish conclusively) that it was defendant driving his car that struck Mrs. Waugh, and that he failed to immediately stop at the scene of the accident as required by chapter 251, § 30, Laws 1929. At the trial defendant maintained that his then wife, the former Arlie Goff referred to herein, was driving the car at the time in question, and in this contention he was supported by his wife, but this testimony was so completely discredited, in our opinion, that the jury was entitled to disregard

it entirely. At the most the testimony only raised a fact issue which was decided adversely to the defendant by the verdict.

With reference to count 2 the court instructed the jury that before they could convict under this count they must be satisfied beyond a reasonable doubt that "the transportation of intoxicating liquors was a contributing cause of the death of Mrs. Fern Waugh." This instruction became a part of the law in the case. The record does not establish any causal connection between the fact that the defendant had not to exceed seven bottles of beer in his car and the death of Mrs. Waugh. We are satisfied that the conviction under this count cannot be sustained.

The conviction under count 1 required a finding by the jury that at the time in question the defendant was guilty of driving his car "upon a highway carelessly and heedlessly in wilful and wanton disregard of the rights or safety of others, or without due caution and circumspection and at a speed and in a manner so as to endanger or to be likely to endanger any person or property." The evidence does, quite conclusively, in our opinion, establish that it was the defendant driving his car that struck and killed Mrs. Waugh, but this fact in itself, of course, is not sufficient to sustain the conviction under this count.

The evidence is without dispute that the car that struck Mrs. Waugh was being driven on the right side of the road. The victim was walking on that side of the road and going in the same direction as the car. The road was of a tarvia or oil composition with a black base which absorbed the rays of the lights. When struck, Mrs. Waugh was "on the tarvia." No estimate of the speed of the car was given by any witness. One witness testified that "she was struck awfully hard." This testimony and the testimony that when the car collided with the woman she was thrown clear of the car is the only testimony as to speed, other than the condition of the car after the accident. Mrs. Waugh weighed 218 pounds. A car traveling at an entirely proper and lawful rate of speed coming in contact with her on the road would come within the meaning of striking her "awfully hard," and no doubt would thereafter show evidences of the collision not dissimilar to those shown by the car in the instant case. We have given careful consideration to the entire evidence, and have concluded that it will not sustain a finding that the car was being driven in such a manner that it showed a

wanton disregard of the rights or safety of others, or at a rate of speed which would be likely to endanger a person or property. True, the person of Mrs. Waugh was endangered, but the evidence fails, in our opinion, to show that this was due to the speed with which the car was being driven, or any wanton disregard of her rights.

We have considered the other alleged errors assigned. The alleged error, if error, was without prejudice to the defendant.' The judgment is reversed as to counts 1 and 2, and affirmed as to count 4.

ROBERTS, P. J., and POLLEY and CAMPBELL, JJ., concur.

WARREN, J. (dissenting). I agree with the majority opinion as to its result in reversing the judgment of conviction on counts 1 and 2. I cannot, however, agree with the results in affirming the conviction as to count 4. The evidence is wholly insufficient to permit the jury to find appellant guilty under count 4. At its best, the evidence could only create in the minds of the jurors a guess as to appellant's guilt. The verdict seems to be the result of speculation upon weak and unsatisfactory evidence.

Certain exhibits such as the automobile driven by the appellant and pictures thereof were permitted in evidence. They might have been permissible if satisfactory evidence had been introduced to lay a foundation to show just what had happened to the automobile some two or three days prior to the accidental killing of Mrs. Waugh and evidence showing what took place when the appellant hit the government mail box post. To my mind the permitting of the jury to view the car and the photographs thereof, without specifically showing just what had taken place in the way of damages to the car in the accident some three or four days before the accidental killing and the injuries suffered in striking the mail box post, was highly prejudicial and did not in any way assist the jury in their determination of the facts sought to be placed before it.

I have examined the testimony as to the alleged confession and it appears to me that appellant was submitted to a rigid examination by the sheriff and that appellant was refused the right to consult an attorney or communicate wtih his brother before sub-

mitting to such an examination. After a careful consideration of both appellant's and Sheriff Helmer's testimony, it is hard to escape from the conclusion that the confession was not obtained voluntarily. There are earmarks which clearly indicate that the sheriff intended to obtain a confession before the appellant had had the benefit of advice from friends or counsel. I do not believe that the sheriff's conduct while holding the appellant a prisoner complied with the generally accepted law relating to the admissibility of confessions in criminal cases. In People v. Loper, 159 Cal. 6, 112 P. 720, 723, 37 L. R. A. (N. S.) 934, Ann. Cas. 1912B, 1193, the California Supreme Court said, in dealing with the admissibility of confession obtained through a similar process:

"It is a fundamental rule of criminal law that a confession may not be used against a defendant, unless the prosecution can show its free and voluntary character, that it was made without previous inducement, and that neither duress nor intimidation caused defendant to furnish such evidence against himself. People v. Miller, 135 Cal. 69, 67 P. 12. It is also true that if threats and inducements are made to a prisoner, and within a few days thereafter he makes a confession, such acknowledgment of the commission of the crime may not be introduced in evidence, unless it clearly appears that the threats and inducements had ceased to operate upon his mind to bring about his statement of his own guilt. People v. Johnson, 41 Cal. 455. * * *

"So long as the constitutional privilege of a defendant not to give evidence against himself exists, that right must be protected by adherence to the well-established rule intended to guard against undue advantage being taken of his fears, hopes, or mental or physical weakness; and while many thoughtful persons believe that those charged with crime should be compelled, either to testify or to bear an adverse presumption as the result of refusal to take the witness stand, no advocate of that change in the law, we believe, goes so far as to desire the machinery of compulsion to be applied anywhere except in the full publicity of open court. In a recent public address, speaking upon this subject, and advocating a change in the rule whereby a defendant is now enabled to refrain from testifying, Mr. Justice Sloss said: 'Side by side with the limitation of the right of the accused to stand mute should go absolute prohibition of testimony or confessions obtained from persons under

arrest, as the result of private questioning by officers of the law. The horrors of the "third regree" are the direct result of the rule prohibiting the prosecution from calling the accused as a witness, or basing any argument upon his failure to take the witness stand in his own behalf. Surely it is far better to question the accused in open court, where he may have the assistance of counsel and the protection of an impartial judge, than to endeavor to convict him by means of an alleged confession which may never have been made and which, if made, may have been extorted from him in ways that, if known, would throw great doubt upon its reliability.'

"In Bram v. United States, 168 U. S. 532, 18 S. Ct. 183, 187, 42 L. Ed. 568, the leading authorities upon the subject of confession are collated and discussed masterfully in the opinion of the court delivered by Mr. Justice White. In that opinion he says: 'A brief consideration of the reasons which gave rise to the adoption of the fifth amendment, of the wrongs which it was intended to prevent, and of the safeguards which it was its purpose unalterably to secure, will make it clear that the generic language of the amendment was but a crystallization of the doctrine as to confessions, well settled when the amendment was adopted, and since expressed in the text-writers and expounded by the adjudications, and hence that the statements on the subject by the text-writers and adjudications but formulate the conceptions and commands of the amendment itself.' In another part of the opinion he observes that: 'There can be no doubt that long prior to our independence the doctrine that one accused of crime could not be compelled to testify against himself had reached its full development in the common law, was there considered as resting on the law of nature, and was embedded in that system as one of its great and distinguishing attributes.' He also quotes with approval part of the opinion of the same court, delivered by Mr. Justice Brown in the case of Brown v. Walker, 161 U. S. 596, 16 S. Ct. 644, 646, 40 L. Ed. 819. * * *

"It is suggested that the evidence in this case was so complete without the confession of the defendant that the jury would have found him guilty, even if the confession had been entirely omitted. While this argument serves to emphasize the lack of excuse for the resort on the part of public officers to the methods of the 'third degree,' it does not abate one whit the defendant's right to

all of his constitutional privileges. He was entitled to stand mute, if he chose to do so, and to have no confession save a voluntary statement—one not extorted by fear nor induced by promises—introduced against him at his trial. Of this right he was deprived."

See Davis v. U. S. (C. C. A.) 32 F. (2d) 860, 863; State v. Johnson, 76 Utah, 84, 287 P. 909.

I believe that justice is best served by observing the rule of the common law that a confession of guilt by accused is admissible against him when, and only when, it was freely and voluntarily made without having been induced by the expectation of any promised benefit or by fear of any threatened injury. What amounts to a voluntary confession is defined clearly in Underhill Criminal Evidence (2d Ed.) par. 126:

"A confession cannot be said to be in every respect freely and voluntarily made if it has been obtained by any sort of threat or violence, promise, direct or implied, or by the exertion of any influence."

It is further said:

"Voluntary is not always used in contradistinction to compulsory. In many cases voluntary means proceeding from the spontaneous operation of the party's own mind free from influence of any extraneous disturbing cause."

Mr. Justice White, in delivering the opinion of the court in Bram v. United States, 168 U. S. 532, 18 S. Ct. 183, 187, 42 L. Ed. 568, quoted from 3 Russell on Crimes (6th Ed.) 478, and said:

" 'But a confession, in order to be admissible, must be free and voluntary; that is, must not be extracted by any sort of threats or violence, nor obtained by any direct or implied promises, however slight, nor by the exertion of any improper influence. * * * A confession can never be received in evidence where the prisoner has been influenced by any threat or promise; for the law cannot measure the force of the influence used, or decide upon its effect upon the mind of the prisoner, and therefore excludes the declaration if any degree of influence has been exerted.'

"And this summary of the law is in harmony with the doctrine as expressed by other writers, although the form in which they couch its statement may be different. 1 Greenl. Ev. (15th Ed.) § 219; Whart. Cr. Ev. (9th Ed.) § 631; 2 Tayl. Ev. (9th Ed.) § 872; 1 Bish. New Cr. Proc. § 1217, par 4.

"These writers but express the result of a multitude of American and English cases, which will be found collected by the authors and editors either in the text or in notes, especially in the ninth edition of Taylor, second volume, tenth chapter, and the American notes, following page 588, where a very full reference is made to decided cases. The statement of the rule is also in entire accord with the decisions of this court on the subject. Hopt v. Utah (1883) 110 U. S. 574, 4 S. Ct. 202 [28 L. Ed. 262]; Sparf v. United States (1895) 156 U. S. 51, 55, 15 S. Ct. 273 [39 L. Ed. 343, 345]; Pierce v. United States (1896) 160 U. S. 355, 16 S. Ct. 321 [40 L. Ed. 454]; and Wilson v. United States (1896) 162 U. S. 613, 16 S. Ct. 895 [40 L. Ed. 1090]."

See, also, Johnson v. State, 107 Miss 196, 65 So. 218, 51 L. R. A. (N. S.) 1183.

I do not believe that the manner and method of securing the confession measures up to the standard or that it can be said to be a voluntary confession. I therefore believe that the court erred in admitting the confession and that the appellants right to a fair and impartial trial as provided by our Constitution was denied and that the judgment of conviction in its entirety should be set aside and the order and judgment appealed from reversed.