STATE, Respondent v. HINZ et al, Appellants

(103 N.W.2d 656)

(File Nos. 9797, 9798. Opinion filed June 17, 1960)

**Maloney & Maloney**, Aberdeen, for Defendants and Appellants.

**Parnell J. Donohue**, Atty. Gen., **Charles Poches, Jr.**, Asst. Atty. Gen., **Mike Ronayne**, State's Atty., Aberdeen, for Plaintiff and Respondent.

HANSON, J. The State's Attorney of Brown County filed an information against the defendant brothers, Elroy and Darrel D. Hinz, charging them in separate counts with the crimes of (1) grand larceny, (2) larceny of lost property, and (3) altering, defacing, or obliterating a brand on sheep. Both defendants were found guilty of grand larceny. The jury also found Darrel guilty of altering a brand on sheep as charged in count 3. Both defendants have appealed contending their statutory and constitutional rights were violated by police interrogation during the interim following their arrests and appearance before a committing magistrate.

So far as material the record shows the complainant, Lester Hoffbauer, is a farmer living near the town of Westport in Brown County. He owns approximately 14 quarters of land and rents other real property for pasture. In the fall of 1958 Hoffbauer owned over 1100 head of sheep. The defendants' parents, Mr. and Mrs. Walter Hinz, own and operate a farm adjoining Hoffbauer. The defendant, Darrel Hinz, a single man resides with his parents. Elroy is married and lives on a nearby farm.

Hoffbauer lost 490 head of sheep during the latter part of 1958. They were all branded with a blue painted "O". The loss was reported to the Brown County Sheriff and a Deputy, Bernie Kopecky, immediately started an investigation.

On Friday, January 9, 1959, Deputy Kopecky met and had a conversation with Elroy. With Elroy's permission he examined the sheep in defendants' corral and found several carried a blue "O" brand. 35 head were identified as Hoffbauer sheep by one of Hoffbauer's hired hands. In the course of

their conversation at the Hinz farm Deputy Kopecky asked Elroy if he was "in this alone or is there somebody else with you?" Elroy replied "What difference does it make, I might as well take the rap myself." He went on to implicate his brother Darrel by stating they had moved sheep from his parents' farm and knew some of Hoffbauer's sheep were in the bunch but didn't bother to sort them out.

A criminal complaint was filed on Saturday, January 10, 1959. Sometime that afternoon defendants were arrested and confined in the Brown County jail at Aberdeen. On Monday morning, January 12th, defendants were taken to the State's Attorney's office in Aberdeen where they were separately interviewed and questioned by the State's attorney and Deputy Sheriff Kopecky. Defendants were thereafter taken to the office of the Chief of Police in the Municipal Building where their statements were stenographically taken down by the Municipal Court Reporter. The statements were separately taken and were in question and answer form. The defendants were not sworn and the Court Reporter was acting at the request of the State's Attorney and not as an official Court Reporter. The transcribed records of defendants' statements indicate the interrogation of Elroy began at 10:15 in the morning and the interrogation of Darrel immediately followed at 10:55. The typewritten statements further show the defendants were advised by the State's Attorney, in effect, that he would like a statement relative to the Hoffbauer sheep if defendants were willing; that they were not required to make a statement and anything they said might be used against them in criminal proceedings. Darrel was also advised he could demand to talk to an attorney.

In response to the questioning defendants made incriminating admissions to the effect that in November 1958 they moved about 350 head of sheep from their parents' farm to Elroy's farm; they knew at the time some of the sheep belonged to Hoffbauer but didn't stop to sort them out; and some of the sheep were rebranded with a red "H" or "O" over the blue brands. Darrel's statement was

introduced in evidence at the preliminary hearing. Neither written statement was introduced at the trial but Deputy Kopecky was allowed to testify as to the statements made by defendants in the State's Attorney's office.

■ Both defendants and their father, Walter Hinz, filed affidavits in support of motions to quash the information. As the state failed to file answering or counter affidavits we are bound to accept the declarations in defendants' affidavits except where the same are directly refuted by record. In substance defendants allege they were arrested on January 10, 1959 and confined in the Brown County jail until late Monday, January 12, 1959; that they advised Deputy Sheriff Kopecky of their desire to see their parents to make arrangements to secure an attorney; that their parents came to the jail on Sunday, and were denied the right to see them; that on Monday morning, January 12, 1959, defendants were taken to the State's Attorney's office and interrogated; that defendants had no attorney and were not advised of their rights to have one; that Monday afternoon they were taken to the office of the Chief of Police and again examined as shown by the written transcripts on file; that defendants were not represented by counsel and were not advised of, or did not understand, their right to counsel; and the interrogations were made while under arrest and defendants had no alternative other than to follow the directions of the Deputy Sheriff.

■ By virtue of their interrogation after arrest and while in custody defendants contend they were, in effect, compelled to be witnesses and give evidence against themselves contrary to Section 9, Article VI of our Constitution. We do not share this view.

■ Defendants cite and rely on the rule of exclusion followed by this court in the cases of State v. Hoffman, 53 S.D. 182, 220 N.W. 615; State v. Smith, 56 S.D. 238, 228 N.W. 240; and State ex rel. Poach v. Sly, 63 S.D. 162, 257 N.W. 113. These cases all involve an accused who had been subpoenaed, sworn, and compelled to testify in a preliminary judicial inquisition authorized by SDC 34.0901 which provides:

"Whenever a complaint verified positively or upon information and belief by the Attorney General, state's attorney or city attorney, is laid before any magistrate that a criminal offense has been committed in this state and asking for an investigation of the same, such magistrate shall issue his subpoena requiring any person he may deem proper to attend before him at the time and place mentioned in such subpoena and submit to an examination and give testimony concerning any violation of law about which he may be questioned. The testimony of such witness shall be reduced to writing by the magistrate or some person under his direction, and shall be signed and sworn to by the witness, and if the offense complained of appears to have been committed, a warrant for the arrest of the offender shall be issued and further proceedings shall then be had as provided by law. * * *"

As pointed out in the case of State v. Smith this official investigative process is commonly known as a "John Doe proceeding". [56 S.D. 238, 228 N.W. 246.] It is so called from the custom of alleging the commission of a criminal offense by the fictional "John Doe" in the initiatory complaint laid before the committing magistrate. In the above-cited cases this court consistently condemned, as a violation of the constitutional privilege against self-incrimination, the practice of calling an accused as a witness in a John Doe proceeding which had for its primary purpose the determination of the accused's guilt or innocence. In this state when the rights of an accused are invaded by such an unconstitutional interrogation he may raise the question by motion to quash (now perhaps more properly by motion to set aside) the information or indictment before entering a plea or by objecting to the admission of such testimony during the trial, if offered.

■ The circumstances under which defendants were interrogated by the State's Attorney are not the counterpart of a John Doe proceeding. Defendants were not sworn

and were not compelled to give evidence against themselves at an official or judicial inquiry. The mere fact of arrest and confinement does not immunize an accused against reasonable and fair interrogation by law enforcement officials.

■ According to Section 9, Article VI of the South Dakota Constitution "No person shall be compelled in any criminal case to give evidence against himself * * *" and as implemented by SDC 34.2907 "No person can be compelled in a criminal action to be a witness against himself * * *." These privileges against compulsion to give evidence and to be a witness in a criminal action should be extended into new areas and situations with caution. Certainly the privilege against self-incrimination was never intended to bar or prevent an accused from freely and voluntarily making an extra-judicial confession, admission, or statement.

■ Defendants also maintain their statements were not freely and voluntarily made and the testimony concerning them by Deputy Sheriff Kopecky deprived defendants of their liberty without due process of law contrary to both the Fourteenth Amendment to the United States Constitution and Section 2, Article VI of the South Dakota Constitution. "The aim of the requirement of due process is not to exclude presumptively false evidence, but to prevent fundamental unfairness in the use of evidence whether true or false. * * * As applied to a criminal trial, denial of due process is the failure to observe that fundamental fairness essential to the very concept of justice. In order to declare a denial of it we must find that the absence of that fairness fatally infected the trial; the acts complained of must be of such quality as necessarily prevent a fair trial. Such unfairness exists when a coerced confession is used as a means of obtaining a verdict of guilt." Lisenba v. People of State of California, 314 U.S. 219, 236, 62 S.Ct. 280, 289, 86 L.Ed. 166.

■ Neither defendant confessed guilt. They did admit certain subsidiary facts of an incriminating nature. The distinction between a confession and admission is important procedurally. When a confession is offered, and de-

fendant timely objects, the state has the burden of proving the confession was freely and voluntarily made. This must first be shown in a preliminary examination of the facts by the trial judge outside the presence of the jury. After hearing the evidence of both the state and defendant the trial court in its discretion may conclude, as a matter of law, that the confession is, or is not, voluntary and admissible in evidence. If the trial judge is doubtful, or the evidence is conflicting, the judge may submit the question of voluntariness to the jury under proper instructions. See State v. Nicholas, 62 S.D. 511, 253 N.W. 737. Inculpatory statements or admissions, on the other hand, are considered to be prima facie voluntary and the burden of going forward with evidence showing otherwise is upon the defendant. In keeping with the modern concept of "fundamental fairness" in criminal prosecutions we believe in the final analysis however both involuntary confessions and involuntary admissions should be excluded from evidence against an accused.

▮▮▮ A confession is involuntary and inadmissible in evidence against an accused if induced by threats, force or violence, promises of immunity or reward, or by psychological coercion.

"Whether psychological coercion exists depends upon a weighing of the circumstances of pressure against the power of resistance of the person confessing. What would be overpowering to the weak of will or mind might be utterly ineffective against an experienced criminal.

"The question whether a defendant's confession was obtained by coercion is one which can only be answered by reviewing all the circumstances surrounding the confession. Even events which occurred subsequently to the confession may properly be taken into consideration. In determining the voluntariness of a confession, the United States Supreme Court has taken into account a variety of factors, none of which, standing alone, would have been conclusive. Among these factors are the de-

fendant's age, his character, his record as to former crimes, educational background, and mental capacity; the legality or illegality of his arrest; the conditions of his incarceration; delay in arraignment; his removal to a distant jail; prolonged questioning of the accused by the · police, especially when accompanied by deprivation of refreshment, rest, or relief, or when done by police officers working in relays; his being kept isolated by the police for a substantial period of time; lack of aid by counsel, or friends, or relatives, or disinterested persons; failure on the part of the police to warn the accused that his statements might be used against him, and to advise him as to his rights, such as his right to remain silent, or to secure a lawyer, or to request a preliminary hearing * * *''. Annotation 1 L. Ed.2d at page 1742.

There is little evidence in this case indicating that defendants' statements were involuntary or coerced. Neither defendant testified at the trial consequently the record is barren as to defendants' education, background, experience, or relative degrees of intelligence. It does appear that at the time of trial Elroy was a married man 24 years of age. He was farming by himself. Darrel was single and 22 years old. Neither had prior criminal records. On the other hand it appears that defendants both knew of their right to have an attorney. No physical force or violence was used or threatened by the Brown County authorities. They were not abused or mistreated in any manner while in custody. There is no claim made that they were illegally arrested or illegally detained before arraignment. No promises of reward or immunity were offered to them as an inducement to talk and defendants were not subjected to prolonged police interrogation or any other "third-degree" technique.

■ ■ Although inexcusable and a practice to be condemned and avoided in the future, the refusal to allow defendants' parents the right of visitation with their sons

while in jail did not render their subsequent statements incompetent. People v. Vinci, 295 Ill. 419, 129 N.E. 193. Likewise, the failure to caution defendants, in advance, of their right to remain silent did not render their admissions involuntary and inadmissible. State v. Roby, 49 S.D. 187, 206 N.W. 925; State v. Wood, 69 S.D. 249, 9 N.W.2d 151; State v. Jerke, 73 S.D. 64, 38 N.W.2d 874; Leick v. People, 136 Colo. 535, 322 P.2d 674; People v. Kelly, 404 Ill. 281, 89 N.E.2d 27; and see 20 Am.Jur., Evidence, § 505, p. 435. Defendants unquestionably were cautioned of their right to remain silent in advance of the second interview at which time their statements were stenographically taken down by the official Court Reporter. Nevertheless, they both willingly repeated their statements. It is also significant to note that the admissions made by defendants while in custody were not substantially different, or more incriminating, than the former admissions freely and voluntarily made by Elroy to the Deputy Sheriff before any arrests were made.

 Merely questioning an accused while in the custody of police officers is not prohibited either as a matter of common law or due process. Lyons v. State of Oklahoma, 322 U.S. 596, 64 S.Ct. 1208, 88 L.Ed. 1481. Nor does the lack or absence of counsel, under those circumstances, render a confession or admission inadmissible in evidence if otherwise freely and voluntarily made. State v. Watson, 114 Vt. 543, 49 A.2d 174; Cahill v. People, 111 Colo. 29, 137 P. 2d 673, 148 A.L.R. 536; State v. Rogers, 143 Conn. 167, 120 A.2d 409; People v. Teitelbaum, 163 Cal.App.2d 184, 329 P. 2d 157. The United States Supreme Court has held that state denial of an accused's request to consult with an attorney, as yet unretained, Crooker v State of California, 357 U.S. 433, 78 S.Ct. 1287, 2 L.Ed. 2d 1448, and denial of a suspect's request to confer with retained counsel, Cicenia v. LaGay, 357 U.S. 504, 78 S.Ct. 1297, 2 L.Ed.2d 1523, during a period of police interrogation does not violate Federal Due Process. The absence or lack of counsel during police interrogation is merely "a circumstance to be considered in determining whether confession was in fact

voluntary or involuntary". Vol. 2 Wharton's Criminal Evidence 12 Ed. § 363. In our opinion the case of Spano v. People, of State of New York, 360 U.S. 315, 79 S.Ct. 1202, 1207, 3 L.Ed. 2d 1265, cited by defendants is not comparable. In that case the majority of the court found it unnecessary to reach petitioner's contention that following indictment no confession obtained in the absence of counsel could be used without violating Federal Due Process. The Spano case is also distinguishable on the facts. It involved a capital offense for which defendant had been indicted. During eight hours of intensive questioning by numerous officials defendant's repeated requests to confer with his retained attorney were ignored. He ultimately confessed apparently because of false representations made by one of the police officers who was a former friend. The majority opinion concluded "that petitioner's will was overborne by official pressure, fatigue and sympathy falsely aroused, after considering all the facts in their post-indictment setting."

 In our opinion the facts in the present case affirmatively show defendants' statements were freely and voluntarily made without any inducement. Furthermore, the circumstances did not create a coercive atmosphere which rendered their statements involuntary and incompetent as a matter of law.

The judgments of conviction are affirmed.

All the Judges concur.