STATE, Respondent v. HALVORSEN, Appellant

(110 N.W.2d 132)

(File No. 9849. Opinion filed July 28, 1961)

**Gale B. Wyman,** Belle Fourche, for Defendant and Appellant.

**A. C. Miller,** Atty. Gen., for Plaintiff and Respondent.

SMITH, P.J.   The defendant has appealed from a conviction of the offense of manslaughter in the second degree. The death involved resulted from circumstances which are not in dispute. A Chevrolet automobile in which defendant and the deceased, Terry Jeremiason, were the sole occupants went into a skid at a point some five miles east of Belle Fourche in Butte County. Its skid extended for about 300 feet on the tarvia surface of the highway, thence for about 100 feet in the left ditch until it mounted a slight slope leading up to an access roadway, whereupon it took to the air over a fence for a distance of about 78 feet, and then bounded an additional 37 feet where it came to rest on all four wheels. Shortly it was in flames. When a fire department, which was called, succeeded in extinguishing the fire, the body of Terry was found in the right front seat with her limbs extending from the open door. She was burned beyond recognition. Defendant was not critically injured and was first seen after the event standing by the highway in a dazed condition.

The central contention of the defendant is founded on the words of Section 9, Article VI of the Constitution of South Dakota reading in part as follows: "No person

shall be compelled in any criminal case to give evidence against himself * * *". This privilege against selfincrimination is reinforced by statute. By SDC 1960 Supp. 34.3633 it is provided:

> "In the trial of all indictments, informations, complaints, and other proceedings against persons charged with the commission of any crime, before any court or committing magistrate, the person charged shall, at his own request, but not otherwise, be a competent witness, and his failure to make such request shall not creat any presumption against him."

The contention is that because, in violation of his constitutional privilege against self incrimination, defendant was compelled to give evidence against himself at a coroner's inquest, the trial court erred in failing to quash the information and in subsequently overruling a motion in arrest of judgment.

This contention stems from the following circumstances. A coroner's inquest was held August 17, 1959. Defendant, eighteen years of age, was present by force of a subpoena issued by the coroner. He was without counsel. In the course of the proceeding, the state's attorney said,

> "I believe that Mr. Halvorsen is in the Courtroom, however, I am not going to call him and if he wants to come forward and testify, that's up to him to do that, or if you would like to call him."

The coroner then said,

> "Did you hear what the State's Attorney said, Mr. Halvorsen? He's not going to call on you to testify. You have the right if you so' wish on your own behalf to come up and be sworn and testify."

Defendant came forward, was sworn and his testimony, which was pursuant to interrogation by the state's attorney, included these questions and answers:

"Q. Would you like to tell your story in your own words, Rollie, just what happened down there the night of the 14th and the early morning of the 15th? A. I'll tell as much as I remember.
* * *

"Q. Did you come from Belle Fourche going east? A. Yes.

"Q. And you were driving at that time?

A. Yes."

The coroner's jury returned a verdict of accidental death. Shortly thereafter a complaint was filed charging defendant with manslaughter in the second degree, and his arrest and prosecution followed. His testimony at the coroner's inquest was received at the preliminary examination of the charges, and at the trial over the strenuous objection of counsel for defendant. No other proof that defendant was operating the car was offered at the preliminary hearing.

The principles which counsel advances in support of his contention were expounded at length in State v. Smith, 56 S.D. 238, 228 N.W. 240 and were explained and emphasized in State ex rel. Poach v. Sly, 63 S.D. 162, 257 N.W. 113. In each of these cases, the challenged interrogation took place at what is commonly known as a John Doe investigation, and at a point prior in time to the filing of a formal accusation and the arrest. Cf. SDC 1960 Supp. 34.09. We reproduce passages from the decision last cited. In that case, 63 S.D. at page 168, 257 N.W. at page 116, it was written:

"A legislative enactment purporting to authorize the prosecutor to subpoena and interrogate the accused either upon preliminary examination, before the grand jury, or at the trial would be an unconstitutional invasion of the rights of the accused beyond possibility of question. Neither the Legislature nor the prosecutor can lawfully in-

vade the constitutional rights of the accused by indirection any more than they could directly. The stage of the proceedings at which the unlawful interrogation is conducted is entirely immaterial. The Legislature cannot render the unconstitutional interrogation of the accused constitutional merely by setting up a new and additional piece of procedural machinery prior in point of time to the preliminary examination before the committing magistrate or the hearing before the grand jury, christening such machinery an 'investigation in aid of prosecution,' and providing that the unlawful interrogation shall take place therein. * * * The constitutional rights of citizens depend upon existent facts; they cannot be abrogated or destroyed by covering up the facts with convenient fictions. It will not usually be difficult to discover whether a John Doe proceeding is in truth a legitimate and good faith general investigation to ascertain whether a crime has been committed and, if so, by whom, or whether, although it may be nominally entitled against John Doe, it is in actual fact an investigation of the guilt or innocence of the suspect X. If it is in truth the latter, then the prosecuting officer has no right to subpoena and interrogate X, though, of course, he may call and interrogate such other witnesses as he may desire. It is not material that X, after being interrogated and sworn, is told that he need not answer any questions, the answers to which he thinks may tend to incriminate him. It is not material that no formal charge of crime has yet been made against X or any one else. It is not material that the proceeding is not entitled against X. Such an interrogation of X is just as unlawful, just as improper, and just as destructive of his constitutional rights as it would be to subpoena and interrogate him before a grand jury investigating a charge against him, or before a committing magis- ·

trate holding a preliminary examination on such charge. The only difference is that the unlawful interrogation is at a somewhat earlier stage of the proceedings. To hold otherwise would simply mean that in this state the constitutional privilege against self-incrimination, so far as concerns persons suspected or accused or about to be accused of crime, would absolutely vanish. In every case, before the filing of formal charge or accusation, the John Doe proceeding could be held, the person suspected and probably about to be accused could be subpoenaed and interrogated, and our criminal procedure would become inquisitorial to the highest degree. Perhaps it ought so to be, but until our Constitutions are changed it cannot be."

And further it was there written:

"The only effective way * * * to prevent unconstitutional interrogation of a person accused or definitely suspected of crime and the only way to prevent abuse of that statute is to let it be known to magistrates and prosecutors that such unconstitutional interrogation cannot be followed by successful prosecution based thereon or connected therewith. Nor is it sufficient answer that there is evidence other than that given by the accused in the course of his unlawful interrogation ample to justify the filing of the information or indictment."

■ A coroner's inquest is held upon dead bodies of such persons only as are supposed to have died by unlawful means. SDC 1960 Supp. 34.1001. The object is to obtain information as to whether death was caused by some criminal act and to furnish foundation for a criminal prosecution in case the death is shown to be felonious. 13 Am. Jur., Coroners, § 6, p. 108; 18 C.J.S. Coroners § 14, p. 293. If it be found that the death was caused by the criminal act of an identified person, the coroner may order his arrest. SDC 1960 Supp. 34.1012.

█ If an inquest is such an investigation as our statutes contemplate, and in all good faith, the one ultimately accused is examined as a witness as distinguished from the suspected offender, and the privilege is not claimed, no constitutional rights are invaded. However, if that which is ostensibly a good faith inquest and investigation is in fact a proceeding aimed at a particular suspect and he is compelled to testify, there has been such testimonial compulsion as the constitution proscribes, and all that this court has said in the cases cited supra applies.

The operative facts leading to the death of Terry Jeremiason impel the conclusion that the inquest was in fact aimed at defendant. In the circumstances then known to all, he was the only person, other than the deceased, who could have caused the death under consideration. The studied care with which the state's attorney and the coroner sought to avoid an unconstitutional interrogation of defendant leaves no room for doubt that they were consciously investigating the guilt or innocence of defendant. The statement of the coroner, "* * * you have the right if you so wish **on your own behalf** to come up and be sworn and testify" is revealing. Whether they succeeded in avoiding an invasion of defendant's right. is the question which confronts us.

If there was testimonial compulsion here, it was of a somewhat different order than was considered in State v. Smith and in State ex rel. Poach v. Sly, supra. In each of those cases the state exerted its power to force defendant to be a witness against himself by subpoena, call, oath and interrogation. In the instant case, although a subpoena forced defendant's attendance at the inquest, he was not interrogated until after he had been informed the state did not intend to call him, but that he had a right, in his own behalf, to testify. It was then that he was sworn and interrogated by the state's attorney without claiming his privilege. It is the position of the state that, in effect, defendant was sworn and testified pursuant to his request, and hence there was a voluntary waiver of his privilege against self

incrimination. It is the validity of this position we shall examine.

After considering many decisions under the topic "Use in subsequent prosecution of self-incriminating testimony given without invoking privilege" and after first observing the universally accepted principle that the privilege may be waived, the annotator at 5 A.L.R.2d 1407 wrote:

"Generally the courts have used the test of voluntariness to determine whether the giving of the testimony in one proceeding constitutes an effective waiver so as to permit its use in a later prosecution. * * *

"The courts, however, have generally been much more reluctant to assume a waiver from the mere failure to assert the privilege in the case of testimony given in the less formal proceedings, such as coroner's inquests, preliminary examinations, and grand jury hearings. Although the test in these proceedings has also been that of 'voluntariness,' many of the courts have, as to testimony from these proceedings, required that the testimony be shown to have been given without compulsion, by a witness who was actually informed of and conscious of his rights. In many instances, either under statute or general principles, the requirement has been that the prisoner be given a warning or caution, instructing him as to his right to refrain from testifying and that his testimony, if given, may be used against him. * * * The requirement of such a warning, even in these types of proceedings, is, however, far from universal, the trend of the more recent cases being, in the absence of statute, to admit the testimony in the absence of a showing of particular circumstances indicating that the privilege was not voluntarily waived."

■ From the cases examined we deem it apparent that whether the asserted waiver can be said to be voluntary depends upon the peculiar facts of the particular case. We turn to our facts.

■ At the critical juncture this eighteen-year-old stood alone with all eyes upon him, and under the terrific pressures generated, not only by the horrible event we have described, the recent attendance upon funeral services for its victim, and by a knowledge gained from the questioning of officers of the law that it was believed the death of Terry Jeremiason was caused by his criminal negligence, but also by the intensification of those pressures by the conduct of the state's attorney in concentrating attention upon him. Whether a natural urge to defend himself would have caused him to offer himself as a witness at the inquest, had he attended of his own volition and had not been placed in the spotlight by the state's attorney, must remain a matter of pure speculation. After he was brought there and pointed out, and it was announced that he would not be called, but had a right to come forward and testify in his own behalf, he was not free to exercise an uncoerced volition. To then fail to testify was to publicly admit a sense of guilt. As the one against whom this proceeding was aimed he had an absolute constitutional right to be free of interrogation therein, whether guilty or innocent. He was without counsel and although of average intelligence, we assume he was not actually informed, either of that right, or as to the use that could be made of his testimony. To tell him he would not be called but could testify in his own behalf was not to inform him either of his right, or of the use to which his testimony could be put. In our opinion, to hold in these peculiar circumstances, that by yielding to the pressure placed upon him by the state a defendant would voluntarily waive his constitutional privilege against self incrimination would be to withdraw much of the substance from that fundamental right. It is our holding that the described inquisition violated the constitutional right of the defendant.

█ It is settled in this jurisdiction that an information directly connected with such an invasion of the constitutional privilege of the defendant will, on motion, be quashed. State v. Smith, supra; State ex rel. Poach v. Sly, supra; State v. Sinnott, 72 S.D. 100, 30 N.W.2d 455, and State v. Hinz, —S.D.—, 103 N.W.2d 656. This sanction awards an undeserved gratuity to the guilty, but as said in State ex rel. Poach v. Sly, 63 S.D. 162, at page 170, 257 N.W. 113, at page 117, "The rule is required as a matter of sound public policy and as the only effective means of preserving the constitutional guarantees."

The judgment is reversed and the cause remanded with directions to quash the information.

ROBERTS, RENTTO and BIEGELMEIER, JJ., concur.

HANSON, J., dissents.

BIEGELMEIER, J. (concurring). That this conviction must be reversed for error in admitting the testimony given by defendant at the coroner's inquest follows from the holding in State v. Hoffman, 53 S.D. 182, 220 N.W. 615 and approved in State v. Smith, 56 S.D. 238, 228 N.W. 240. See also State v. Allison, 116 Mont. 352, 153 P.2d 141; 5 A.L.R.2d 1446, 1453. Whether the court should further direct the information be quashed seems of such moment as to require this expression of concurrence. This legal principle was announced by dictum in the Smith opinion, accepted, distinguished or not applied in State ex rel. Poach v. Sly, 63 S.D. 162, 257 N.W. 113 and State v. Sinnott, 72 S.D. 100, 30 N.W.2d 455, because of the unusual facts or reasons stated in those opinions. Other courts have not gone so far. United States v. Scully, 2 Cir., 225 F.2d 113.

The statutory and constitutional history of the problem in New York is told in part in People v. Molineux, 168 N.Y. 264, 61 N.E. 286, 308, 62 L.R.A. 193, 291; People v. Ferola, 215 N.Y. 285, 109 N.E. 500; People v. De Feo, 308 N.Y. 595, 127 N.E.2d 592, and People v. Steuding, 6 N.Y. 2d 214, 189 N.Y.S.2d 166, 160 N.E.2d 468. Requiring a de-

fendant to testify at a coroner's inquest under subpoena was held no defense to a later prosecution as 'this' would permit a coroner to grant immunity to a defendant and dismiss a criminal action, which only a trial court may do on application of the prosecuting attorney under statutes similar to our SDC 1960 Supp. 34.2204, 34.2205. Faucett v. State, 10 Okl.Cr. 111, 134 P. 839, L.R.A.1918A, 372. The constitutional right must prevail over the statute. Mindful of the consequences of the unconstitutional interrogation, the state may not thereafter successfully prosecute. It has made its choice. Here it did so in the face of the several opinions of this court noted above. They persuade me to concur in the court's opinion.

HANSON, J. (dissenting). In my opinion the record does not reflect a violation of defendant's constitutional privilege against self incrimination. In speaking of a John Doe proceeding this court said that "Every presumption should be indulged in favor of the view that a legitimate use was being made of the statute by the magistrate and prosecuting officers, rather than an illegitimate use; and the burden is on a defendant raising the constitutional question with reference to his having been subpoenaed and examined as a witness in a John Doe proceeding to show affirmatively that such proceeding at the time he was called, regardless of its form, was in truth and in fact an investigation of his guilt or innocence." State v. Smith, 56 S.D. 238, 228 N.W. 240, 251. The court went on to define an unlawful "inquisition" as "any judicial inquiry which has for its primary object the determination of that person's guilt or innocence of a given offense". It would seem the same presumption of legality should be accorded to a coroner's inquest and the same burden of affirmative proof to show otherwise required of one who challenges the constitutionality of its procedure.

Our law authorizes a coroner to "hold an inquest upon the dead bodies of such persons only as are supposed to have died by unlawful means". SDC 1960 Supp. 34.1001. In my opinion there is no proof in this case indicating that

the coroner's inquest was not properly convened and fairly conducted for the legitimate purpose of determining whether or not the deceased, Terry Jeremiason, died by unlawful means. The coroner's verdict of accidental death exonerated defendant from blame. Such verdict would seem to repel any inference the inquest was an "inquisition" aimed at defendant.

The majority opinion infers the State's Attorney and Coroner of Butte County connived together with "studied care * * * to avoid an unconstitutional interrogation of defendant * * * that they were consciously investigating the guilt or innocence of defendant." Shortly after the accident defendant admitted to three different persons that he drove the car in which Terry was killed. This fact was clearly established at the trial by the undisputed testimony of George Malcolm, George Smith, and Roy Dillavou. Under the circumstances, it does not seem logical to infer the law enforcement officials connived together and contrived an elaborate legal trap to elicit for the fourth time the same admission from defendant.

The record furthermore conclusively shows, in my opinion, that defendant voluntarily testified as a witness at the coroner's inquest. "A common test of the voluntariness of the testimony before the coroner's jury has been whether the defendant was under arrest or charged with a crime at the time the testimony was given or whether he testified as a mere witness. Generally the testimony of the defendant before the coroner's jury has been freely admitted where he was not under arrest or charged with the crime at the time but testified merely as a witness." 5 A.L.R.2d at page 1447. Defendant was not under arrest or charged with any offense at the time. He did appear at the coroner's inquest in response to a subpoena but this is not an unusual circumstance. Prospective witnesses are frequently subpoenaed and not called to testify. Defendant was clearly advised by the state's attorney he was not going to be called as a witness for the state. Likewise the coroner informed defendant the state was not going to call him as a

witness and further correctly advised him "you have the right if you so wish on your own behalf to come up and be sworn and testify."

During the trial of this case the jury had the benefit of seeing defendant and observing his conduct and demeanor. They concluded he was mature enough to be criminally responsible for the death of Terry Jeremiason. In the absence of evidence to the contrary we should assume he was mature and intelligent enough to voluntarily consent to be a witness at the coroner's inquest after being advised of his rights. Having volunteered to be a witness it was defendant's obligation, if he so desired, to claim his privilege against self incrimination. Failing to do so his testimony was properly admitted at the subsequent preliminary hearing and trial. See State v. Mayabb, Mo., 316 S.W.2d 609.

Because defendant was allowed to voluntarily take the stand and testify at the coroner's inquest his conviction of a serious crime is set aside by the majority opinion and he is immunized against further prosecution for the same offense. Law enforcement officials will be judicially handicuffed by this undue and unrealistic extension of an already harsh rule. Now, it will be necessary for them to take affirmative action to prevent anyone suspected of crime from similarly voluntarily testifying at any preliminary judicial investigation.

I would affirm.