STATE, Respondent v. CONNORS, Appellant

(149 N.W.2d 65)

(File No. 10319.   Opinion filed March 6, 1967)

**C. L. Anderson,** Sioux Falls, for defendant and appellant Timothy W. Connors.

**Frank L. Farrar,** Atty. Gen., **Walter W. Andre,** Asst. Atty. Gen., Pierre, **Roger A. Schiager,** State's Atty., **Sam Sechser,** Deputy State's Atty., Sioux Falls, for plaintiff and respondent.

ROBERTS, Judge.

Appellant Timothy W. Connors was tried before a jury in the Circuit Court of Minnehaha County on a charge of robbery. The jury returned a verdict of guilty and accused was sentenced to prison for a term of ten years. Upon this appeal it is the contention of appellant that evidence of incriminating statements obtained from him during the course of a police interrogation was in violation of his constitutional rights for the reason that he was not informed before the interrogation that he had the right to remain silent and to presence of counsel.

The facts insofar as here material are that about 9:00 p. m., July 13, 1961, two men entered the Red Owl Store at 519 So. Minnehaha Avenue in Sioux Falls and at gun point compelled store manager, Claude G. Perryman, to transfer the money contained in a safe and seven cash registers into a cardboard box. The gunmen then forced him to carry out and place the box containing the money amounting to approximately sixty-six hundred dollars in a car parked near the store. Appellant and his accomplice then drove off. Appellant and one Richard E. Williams were identified in a police lineup in Minneapolis about a month later by Mr. Perryman as the persons committing the robbery.

The record further indicates that appellant and Williams were charged in Minnesota with attempted robbery, found guilty and sentenced to imprisonment. Appellant having served his sentence in that state and waiving extradition and hearing was

returned to this jurisdiction on May 21, 1965. Appellant was tried under an information charging him and Richard E. Williams with the robbery occurring on July 13, 1961. The trial commenced September 28 and was concluded September 30, 1965. Appellant was represented at both a preliminary hearing and trial in the circuit court by court appointed counsel.

The statements and the circumstances under which appellant made them were testified to by officer Harry Knott as follows:

"Q   What is your occupation?  A   Lieutenant with the Sioux Falls Police Department.

*   *   *   *   *   *   *   *

"Q   And as part of your duties were you called on to do certain investigation work in connection with the Red Owl Store robbery on the evening of July 13, 1961?  A   Yes.

"Q   Did you have occasion to leave the State of South Dakota in connection with that robbery?  A   I did.

"Q   Where did you go?  A   Minneapolis, Minnesota.

"Q   While you were at Minneapolis, Minnesota, did you have a conversation with anyone concerning that robbery?  A   I did.

"Q   Whom did you talk with?  A   Timothy Connors and Mr. Williams, Richard Williams I believe.

"Q   Where did you have your conversation with these men?  A   This was in the Minneapolis Police Department.

"Q   Did you talk with them together or separately?  A   Separately.

*   *   *   *   *   *   *   *

"Q   Do you know approximately how long it would have been after the robbery of July thirteen?  A   Probably a month.

\* \* \* \* \* \* \* \*

"Q And could you tell us what conversation took place at that time? A Well upon my meeting Mr. Connors, I introduced myself as a police officer from Sioux Falls, South Dakota, and told him I had just talked to his partner, Mr. Williams, who had admitted his participation in our robbery and that I would like to have a statement, if possible, from him and asked him if he would waive extradition to come back to Sioux Falls. Mr. Connors stated at this time that if Minnesota would drop their charges on him there, he would come back to Sioux Falls voluntarily.

"Q Did you have a conversation about the crime in Sioux Falls itself? A Yes sir.

"Q Will you tell us what was said in regards to that? A Well when questioning Mr. Connors with regards to our robbery, he explained how scared Mr. Perryman was when the robbery took place but he stated he probably would have been the same way if the shoe had been on the other foot. Mr. Connors went on to explain how they had left the scene and then went to the motel and listened to our police road block from one of our police cars.

"Q Where was he at the time? A They were in the Sioux Heights Motel on East 10th Street which is right along side the road.

"Q Did he say how he could hear a police radio? A Yes. \* \* \* Mr. Connors explained how he had heard the police radio talking concerning the road block for the two men that had held up the Red Owl Store. How he had walked up closer behind a tree and listened to the police search for the robbers and that after the search had been called off, he and Mr. Williams then had left going down South Cleveland and out through side roads out of town.

"Q Did you have any other conversation with Mr. Connors that you can recall concerning him being in Sioux Falls or anything about this armed robbery of July thirteen? A Not that I can think of right off hand."

Appellant contends that the admission of the incriminating statements made to the police officer who did not warn him of his right to silence and counsel violated his constitutional rights as interpreted in Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (June 22, 1964). No question was raised at the trial whether the circumstances under which the statements were made required that the police officer advise appellant of such rights or whether the statements were in fact involuntary.

■ In Escobedo v. State of Illinois, supra, the court states:

"We hold, therefore, that where, as here, the investigation is no longer a general inquiry into an unsolved crime but has begun to focus on a particular suspect, the suspect has been taken into police custody, the police carry out a process of interrogations that lends itself to eliciting incriminating statements, the suspect has requested and been denied an opportunity to consult with his lawyer, and the police have not effectively warned him of his absolute constitutional right to remain silent, the accused has been denied 'the Assistance of Counsel' in violation of the Sixth Amendment to the Constitution as 'made obligatory upon the states by the Fourteenth Amendment;' Gideon v. Wainwright, 372 U.S. 335, at 342, 83 S.Ct. [792], at 795 [9 L.Ed.2d 799] and that no statement elicited by the police during the interrogation may be used against him at a criminal trial."

The Court in Miranda v. State of Arizona (June 13, 1966) 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, delineates certain rules and procedural safeguards with respect to in-custody interrogation by police. As to the retroactive operation of Escobedo and Miranda, the Court in Johnson v. State of New Jersey (June 20, 1966), 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882, held that both

decisions apply only to trials commenced after the date on which each decision was announced. The Court in the Johnson case said:

"(R)etroactive application of Escobedo and Miranda would seriously disrupt the administration of our criminal laws. It would require the retrial or release of numerous prisoners found guilty by trustworthy evidence in conformity with previously announced constitutional standards. Prior to Escobedo and Miranda, few States were under any enforced compulsion on account of local law to grant requests for the assistance of counsel or to advise accused persons of their privilege against self-incrimination."

■■■ Miranda does not apply to the instant case wherein the trial was commenced prior to decision in that case. Concern, however, is with future application of the rules therein set forth that must be adhered to by law enforcement officials and the courts of this state. Miranda is founded upon the basic principle that the Fifth Amendment against self-incrimination and the Sixth Amendment right to be represented by counsel are protected under the Fourteenth Amendment against abridgement by the states. Miranda rules that in the absence of intelligent waiver of his constitutional rights a suspect prior to an in-custody police interrogation must be warned clearly and unequivocally (1) that he has a right to remain silent, (2) that any statement that he does make may be used as evidence against him, (3) that he has a right to consult with and have present prior to and during interrogation an attorney, either retained or appointed, and (4) that if he cannot afford an attorney, one will be appointed for him prior to any questioning if he so desires. It is not sufficient that some but not all of these warnings be given. The effect of noncompliance with any one of the requirements of warnings renders a statement obtained by police during an in-custody interrogation inadmissible.

■■■ As previously stated, appellant relying on Escobedo applying to trials after decision therein contends that the statements obtained from him during the in-custody interrogation

without advising him of his right to refrain from answering any question and his right to counsel were inadmissible. It is argued that appellant was then a "suspect" and that the object of the interrogation was not to solve a crime but to elicit incriminating statements. Decisions interpreting Escobedo are divided. Considered in the light of its facts that decision does not hold that failure alone to advise a suspect of his right to remain silent and right to counsel is sufficient ground for reversal. United States v. Robinson, 2 Cir., 354 F.2d 109; United States v. Cone, 2 Cir., 354 F.2d 119; People v. Gunner, 15 N.Y.2d 226, 205 N.E.2d 852; People v. McQueen, 18 N.Y.2d 337, 274 N.Y.S.2d 886, 221 N.E.2d 550; Browne v. State, 24 Wis.2d 491, 129 N.W.2d 175, 131 N.W.2d 169; Reimers v. State, 31 Wis.2d 457, 143 N.W.2d 525; State v. Beasley, Mo., 404 S.W.2d 689; contra: Russo v. New Jersey, 3 Cir., 351 F.2d 429; People v. Dorado, 40 Cal.Rptr. 264, 394 P.2d 952; State v. Neely, 239 Or. 487, 395 P.2d 557, 398 P.2d 482. Appellant made no request to consult with an attorney or anyone else nor did an attorney seek to confer with him as occurred in Escobedo.

■ Nor do we feel that admission of the evidence in question was affected by the representation of the police officer during the interrogation that Williams admitted participation in the robbery. Counsel for appellant contends that the representation implied that "in all probability Williams was going to be cooperative with the police" and that this technique rendered the obtaining of the statements so unfair as to amount to violation of constitutional rights. No objection was made at the trial as we have stated to the admission of any of the statements. We have assumed, however, for purpose of decision that it is not necessary to object to preserve error allegedly based upon unconstitutionally admitted evidence. See Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908. It is not claimed that the representation by the police officer was false. There was no deception or trickery involved. The contention is entirely without merit.

Appellant had a fair trial. There was no reversible error and the judgment is affirmed.

All the Judges concur.