STATE Respondent v. THUNDERSHIELD et ux., Appellants

(160 N .W.2d 408)

(File No. 10336  Opinion filed July 23, 1968)

**Elmer Leroy Hill,** Belle Fourche, for defendants and appellants.

**Frank L. Farrar,** Atty. Gen., **Walter W. Andre,** Asst. Atty. Gen., Pierre, **William E. Anderson,** State's Atty., Belle Fourche, for plaintiff and respondent.

HANSON, Presiding Judge.

Bedie Thundershield and his wife, Cecelia, were conjointly charged and found guilty of the crimes of (1) Assault, other than felonious, with a dangerous weapon, (2) Robbery in the first degree, and (3) Grand Larceny. On appeal they assert their constitutional rights were violated by admitting in evidence incriminating statements made to the sheriff after arrest and detention.

All of the crimes arise out of an incident involving Isaac "Ike" Karinen on May 18, 1965 at which time defendants were in Nisland looking for work. Early in the morning of that day they met Ike who offered to help find employment. For this ostensible purpose the three rode around the Nisland area together in Ike's 1949 Chevrolet. Most of the time was spent drinking copious quantities of wine and other intoxicating beverages.

In the afternoon they drove south of Nisland a few miles and stopped at a remote place on the bank of Stinking Water Creek. According to the State's evidence which included admissions made by defendants, Ike and Cecelia walked down to the creek to see where Ike fished. A little while later Bedie came down and beat Ike with a hammer. During the fray Cecelia took Ike's wallet and defendants left in Ike's car. Ike was found later in a bloody and battered condition suffering from a concussion and multiple cuts and abrasions about his head and body.

Defendants were apprehended later in the day at Faith, South Dakota driving Ike's car. They were arrested by the town marshal for public intoxication and placed in the city jail. About noon next day they were released to the Sheriff of Butte County on a warrant for grand larceny. The sheriff read the warrant to defendants, which was for the theft of Ike's car. The sheriff also advised defendants they didn't have to tell him anything if they didn't want to and they could talk to an attorney if they desired. Defendants were then taken back to Belle Fourche by the sheriff and two deputies. One deputy drove Ike's car back to Newell where the group stopped for lunch. During the trip defendants admitted beating Ike and taking his car. They also directed the officers to the scene of the crime where blood stained grass, rocks and a ball peen hammer were found.

Defendants testified in their own behalf at the trial which was held on December 6, 1965. They admitted their association with Ike Karinen on the day of the crime and did not deny assaulting him or driving away with his car. However, their version of what transpired at Stinking Water Creek differed somewhat from their earlier admissions. According to their testimony Bedie was so intoxicated he passed out when the party stopped at the creek. Ike dragged Cecelia down to the bank of the creek where he had intercourse with her against her will. After some interval of time Bedie came to. Hearing Cecelia scream he went to her aid by beating and kicking Ike. Afterwards Ike was so remorseful about his conduct toward Cecelia that he gave her his money and the keys to his car. He then told defendants he would walk back to Nisland. This conflict in evidence as to what provoked the assault and what transpired at the creek were the main issues at the trial which the jury resolved in favor of the state.

■ ■ Relying upon Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (June 22, 1964) as authority, defendants contend the incriminating statements made by them to the Butte County Sheriff following arrest were involuntary and inadmissible in evidence. Escobedo holds that where "the investigation is no longer a general inquiry into an unsolved crime but has begun to focus on a particular suspect, the suspect has been taken into police custody, the police carry out a process of interrogations that lends itself to eliciting incriminating statements, the suspect has requested and been denied an opportunity to consult with his lawyer, and the police have not effectively warned him of his absolute constitutional right to remain silent, the accused has been denied 'the Assistance of Counsel' in violation of the Sixth Amendment to the Constitution as 'made obligatory upon the States by the Fourteenth Amendment' * * * and that no statement elicited by the police during the interrogation may be used against him at a criminal trial." However, the facts and sum total circumstances in the two cases are not comparable. Escobedo was not advised of

his right to remain silent or of his right to an attorney. He repeatedly requested and was denied the right to consult with his attorney who was present at the police station where the prolonged interrogation took place. Defendants in their present action were not denied similar rights and their incriminating statements were apparently freely and voluntarily expressed.

██    It furthermore appears that the trial judge conducted a preliminary investigation of facts outside the presence of the jury and determined the statements were voluntarily made before allowing them to be introduced as evidence. The issue of voluntariness was not submitted to the jury. This procedure conformed to the orthodox rule approved by the United States Supreme Court in Jackson v. Denno (June 22, 1964), 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908, 1 A.L.R.3d 1205. The court also approved the Massachusetts rule but held the New York procedure for determining the voluntariness of confessions violated the due process clause of the Fourteenth Amendment. In doing so the court said "It is now axiomatic that a defendant in a criminal case is deprived of due process of law if his conviction is founded, in whole or in part, upon an involuntary confession, without regard for the truth or falsity of the confession, Rogers v. Richmond, 365 U.S. 534, 81 S.Ct. 735, 5 L.Ed.2d 760, and even though there is ample evidence aside from the confession to support the conviction. Malinski v. People of State of New York, 324 U.S. 401, 65 S.Ct. 781, 89 L.Ed. 1029; Stroble v. State of California, 343 U.S. 181, 72 S.Ct. 599, 96 L.Ed. 872; Payne v. State of Arkansas, 356 U.S. 560, 78 S.Ct. 844, 2 L.Ed.2d 975. Equally clear is the defendant's constitutional right at some stage in the proceedings to object to the use of the confession and to have a fair hearing and a reliable determination on the issue of voluntariness, a determination uninfluenced by the truth or falsity of the confession."

Under the New York rule the trial judge made a preliminary determination regarding the voluntariness of a confession and excluded it if deemed involuntary. If the evidence presented a fair question as to voluntariness, the confession was allowed in evidence and the jury, under proper instructions, made the

final determinations as to its voluntary character and also its truthfulness. According to Jackson v. Denno "This procedure has a significant impact upon the defendant's Fourteenth Amendment rights. In jurisdictions following the orthodox rule, under which the judge himself solely and finally determines the voluntariness of the confession, or those following the Massachusetts procedure, under which the jury passes on voluntariness only after the judge has fully and independently resolved the issue against the accused, the judge's conclusions are clearly evident from the record since he either admits the confession into evidence if it is voluntary or rejects it if involuntary. Moreover, his findings upon disputed issues of fact are expressly stated or may be ascertainable from the record. In contrast, the New York jury returns only a general verdict upon the ultimate question of guilt or innocence. It is impossible to discover whether the jury found the confession voluntary and relied upon it, or involuntary and supposedly ignored it. Nor is there any indication of how the jury resolved disputes in the evidence concerning the critical facts underlying the coercion issue. Indeed, there is nothing to show that these matters were resolved at all, one way or the other."

Like other jurisdictions following the New York rule it is now mandatory to review and modify the South Dakota practice for determining the voluntariness of confessions and involuntary admissions established in State v. Hinz, 78 S.D. 442, 103 N.W.2d 656; State v. Nicholas, 62 S.D. 511, 253 N.W.737; State v. Montgomery, 26 S.D. 539, 128 N.W. 718 to conform either to the orthodox or Massachusetts rule. The difference between the two rules is in the allocation of responsibility between the trial court and the jury. According to the orthodox rule the trial judge hears the evidence and makes an independent and final determination as to the voluntariness and admissibility of the confession. If found to be involuntary, it is not admitted. If found to be voluntary, it is admitted and the jury considers voluntariness only as it affects the weight and credibility of the confession. The Massachusetts rule follows the same procedure except if the confession is found to be voluntary

it is admitted in evidence and the jury instructed it must also find the confession to be voluntary before it may be considered.

Since Jackson v. Denno the courts of New York, Oregon, and Texas have elected to follow the Massachusetts rule in People v. Huntley, 15 N.Y.2d 72, 255 N.Y.S.2d 838, 204 N.E.2d 179, State v. Brewton, 238 Or. 590, 395 P.2d 874, and Harris v. State, Tex.Cr.App., 384 S.W.2d 349, mainly because it preserves a defendant's constitutional right to a jury trial on all issues of fact. On the other hand, the courts of Wisconsin, Michigan, Minnesota, Iowa and Louisiana, in State ex rel. Goodchild v. Burke, 27 Wis.2d 244, 133 N.W.2d 753, People v. Walker, 374 Mich. 331, 132 N.W.2d 87, State v. Keiser, 274 Minn. 265, 143 N.W.2d 75, State v. Holland, 258 Iowa 206, 138 N.W.2d 86, and State v. White, 247 La. 19, 169 So.2d 894, adopted the orthodox rule for numerous reasons.

The orthodox rule is favored for use in South Dakota because:

(1) It affords a single reliable and final determination of the question of voluntariness which is a mixture of fact and law;

(2) It avoids the possibility of a jury mingling the issue of voluntariness with the ultimate issue of guilt;

(3) It avoids the speculation inherent in the Massachusetts rule as to whether or not a jury finds the confession involuntary but truthful and relies on or ignores it;

(4) The general verdict under the Massachusetts rule does not indicate how the jury resolves the issue of voluntariness;

(5) The voluntariness of a confession involves its admissibility in evidence. This is a matter of law for the court to decide the same as any other motion to suppress or strike evidence. It does not offend an accused's constitutional right to a jury trial. By approving the orthodox rule the United States Supreme Court inferentially determined such procedure did not

violate the Sixth Amendment right to a "speedy and public trial by an impartial jury" which provision is identical to Art. VI, § 7 of the South Dakota Constitution.

In order to conform to the orthodox rule in this state the following procedure is suggested: When a confession or an incriminating statement allegedly made by the accused is offered by the prosecution and objected to, the state has the burden of proving beyond a reasonable doubt the same was freely and voluntarily made. This proof must be made in an independent hearing of all relevant facts outside the presence of the jury. At this hearing the defendant may testify and be cross-examined as to the issue of voluntariness without jeopardy to or waiver of his right to remain silent at the trial. After hearing the facts the trial judge must finally and solely determine, as a matter of law, whether or not the confession or incriminating statement is, or is not, voluntary. This determination and the evidence upon which it is based should be made part of the record. If found to be involuntary the confession or statements may not be admitted at the trial as evidence. If found to be voluntary they may be admitted in evidence for consideration by the jury as to their weight and credibility together with all the other facts and circumstances. No special instructions on this subject should be necessary.

In the present action we see no reason to disturb the trial judge's ruling admitting defendants' statements. Although Indians with limited formal educations they were not strangers to criminal procedures. Their rights to remain silent and consult with an attorney were explained and they were not subjected to a pressurized prolonged interrogation. Their admissions were apparently freely expressed and were not materially different from their sworn testimony at the trial. No force was used. No threats were made and no trickery was employed to obtain defendants' statements.

Defendants' trial was conducted in December 1965, therefore the issues are not retroactively governed by the mandate of Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602,

16 L.Ed.2d 694, 10 A.L.R.3d 974, which was decided June 13, 1966. Johnson v. State of New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882, State v. Connors, 82 S.D. 489, 149 N.W.2d 65 and State ex rel. Pekarek v. Erickson, 83 S.D. 79, 155 N.W.2d 313. Likewise, the statutory codification of rights of an accused contained in Chapter 145, Laws of 1967 do not retroactively apply to the facts in this case.

Defendant, Bedie Thundershield, makes the further assertion for the first time in his brief that accusatory statements made by the codefendant, Cecelia Thundershield, in his presence were not admissible in evidence as a tacit affirmation of the truth of accusations by his silence. However, this question is not presented. Bedie, in fact, did not remain silent in the face of such accusations. No objection was made to the admission of the incriminating statements on this ground and no instruction to the jury on the subject was requested or given.

Affirmed.

RENTTO, BIEGELMEIER and HOMEYER, JJ., concur.

ROBERTS, Judge (dissenting in part).

I concur in the judgment in this case and in part with the court's opinion. As a matter of federal constitutional law, this court has a choice between a rule whereby the judge finally determines voluntariness and a rule under which the jury passes on voluntariness, but only after the judge has found that the confession or admission was voluntary. I think that an accused is entitled to have the jury also determine the issue of voluntariness under proper instructions along with other factual issues. The Constitution of this State, Art. VI, § 7, provides: "In all criminal prosecutions the accused shall have the right * * * to a speedy public trial by an impartial jury of the county or district in which the offense is alleged to have been committed." In other words, the "Massachusetts" rule is in my judgment the sounder and better rule and more consistent with constitutional rights of an accused preserved by the Constitution of this State.