STATE, Respondent v. SEAL, Appellant

(160 N.W.2d 643)

(File No. 10461. Opinion filed August 16, 1968)

**Arend E. Lakeman,** Mobridge, for defendant and appellant.

**Frank L. Farrar,** Atty. Gen., **Thomas R. Vickerman,** Asst. Atty. Gen., Pierre, **Robert L. Tschetter,** State's Atty., McIntosh, for plaintiff and respondent.

HOMEYER, Judge.

Defendant, David Seal, appeals his conviction of the crime of grand larceny. The sole question presented is the admissibility of an incriminating statement purported to have been made by appellant and used by the state at the trial in securing his conviction.

Appellant is a Texan who came to South Dakota about mid-September 1966 to work as a ranch hand for Jerry Smith, a fellow Texan. Smith had extensive ranching interests in Corson County southwest of Mobridge. At about 4:00 a. m. on October 28, 1966, at Valentine, Nebraska, appellant was driving a pickup with a horse trailer attached, when stopped by a police officer. Jerry Smith was riding with him. In the trailer were 3 Hereford bulls and a yearling steer. The pickup and trailer were the property of Smith. Because one of the animals appeared to have a brand, and the possessors did not have a bill of sale or other clearance on the cattle, inspectors were summoned and it was discovered that the steer bore the registered brand of Absalom Rye of Mobridge. Telephone calls resulted in Rye, Harry Kittleson, Sheriff of Corson County, and Clayton Vickmark, identification agent for the South Dakota Department of Criminal Investigation, traveling to Valentine where at about 3:00 p.m. that day Rye positively identified the steer and 3 bulls, which bore the registered brand of his son, Harold Rye, as the property of the two Ryes.

At this juncture Smith informed the inspectors that "Dave (appellant) has got something he wants to tell you". Shortly thereafter in the sheriff's office at Valentine with Smith, appellant, and inspectors Nelson and Bailey present, and after the officers read a card reciting Miranda warnings and rights,[1] appellant said: "Jerry didn't have anything to do with this" and that he had loaded the cattle in the open. Concerning a previous load of cattle he had hauled to Texas, appellant said they were at his place at Tell, Texas. Appellant's version and that of the officers is essentially the same concerning what occurred and what was said at this time. Inspector Bailey also testified that in advance of the conversation he said: "You fellows are as of now under arrest for a felony out of South Dakota."

After this Sheriff Kittleson explained that extradition procedures would have to be followed unless they voluntarily waived them. Appellant and Smith both signed extradition waivers and were permitted to drive back in the pickup with instructions to report to the sheriff at his office at McIntosh, South Dakota, the next morning.

On October 29, 1966, appellant and Smith accompanied an attorney, whom Smith had arranged for, from Mobridge to McIntosh. They arrived at the sheriff's office at about 9:30 a.m. Appellant was instructed to remain at the sheriff's office while Smith and the attorney went to a Mobil station nearby. The prosecuting attorney was at the station and had a conversation with the Mobridge attorney in which he was informed that the attorney was representing Smith and the prosecutor advised that Smith would not be arraigned at this time. In response to a question from the prosecutor, the Mobridge attorney then stated that he did not represent appellant because "There would be a conflict of interest."

Shortly thereafter the prosecutor drove his car in front of the courthouse and while Smith and the Mobridge attorney were absent, appellant was told by the sheriff he (appellant)

1. Miranda v. State of Arizona, June 13, 1966, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, 10 A.L.R.2d 974; see also State v. Connors, 82 S.D. 489, 149 N.W.2d 65.

had to talk to the prosecutor. Appellant was then taken into the front seat of the prosecutor's car and the sheriff occupied the back seat. The sheriff's testimony is contradictory, vague, and indecisive. He could not recall what was said in the conversation. Appellant testified he asked for an attorney, but the prosecutor kept asking questions. The prosecutor's version of what occurred is not entirely clear or consistent.[2] Appellant was arraigned minutes after the incriminating statement was made. Smith was present at the arraignment and informed the magistrate that appellant had a lawyer. Bail was fixed at $1,000 and Smith furnished a cash bond in that amount for appellant.

Appellant's defense was that he believed the cattle belonged to Smith and were being transported to Smith's ranch in Texas. That the statement he made to the inspectors at Valentine was under the influence of and upon urging by Smith who represented that he would obtain a bill of sale to the cattle and prevent prosecution. At the trial the former prosecutor[3] testified:

"Q * * * Then what took place in the conversation (in his car) after that? A I asked him about the cattle that were caught, taken down in, apprehended down in Valentine, Nebraska.

"Q The Ab Rye cattle, were it? A He said they were Abe Rye's. Abe Rye, I believe he said. I don't believe he said Absalom, but Abe Rye. And I said, 'Well, how did you know that those were Abe Rye's cattle?' He said, 'I helped round those cattle up on Wednesday and they were left out there at his place, the 3 bulls and a steer'. And then he said that—I said, 'How did you get those cattle loaded?' I said, 'You'd sure have to have

---

2. In an offer of proof by the state in the absence of the jury the prosecutor testified he informed appellant: "* * * 'you do not have to testify or talk to me or visit with me at all unless an attorney is present * * * if you wish to talk to me you can * * * do you want to get an attorney?'" Appellant replied " 'Well * * * I don't know yet. I may get an attorney' ". Before the jury the prosecutor testified appellant said he did not want an attorney before making the statement, but immediately after the statement was made, and as he and the sheriff were leaving the prosecutor's car, appellant said: "I'm not going to enter a plea until I obtain an attorney".

3. At the time of trial he was no longer prosecuting attorney for Corson County and his successor prosecuted the case.

some help to load cattle out there'. He said, 'No, I loaded them alone. I loaded them out there on the right-of-way near Abe Rye's place.' And I again asked him if he knew whose cattle they were and he said yes, he did, they were Abe Rye's. And, oh, we had other discussion there and finally I asked him about some other cattle that we were interested in that we had known had been missing in that area and he said, 'I would rather not discuss that'. And I didn't ask him any more questions about that then."

The trial judge told the jury he had admitted the purported incriminating statement and the facts and circumstances surrounding its making, and instructed if they found it was made "freely and voluntarily \* \* \* then you should take it into consideration with all the other evidence in the case in determining the guilt or innocence of the defendant." If they believed it was not made freely and voluntarily they were instructed to disregard it.

A preliminary hearing was held outside the presence of the jury on the admissibility of this statement. Testimony was offered by both sides. At the conclusion of the hearing, the trial judge admitted the statement. In so doing, however, it is plain he misconceived the import of the Supreme Court decision in Jackson v. Denno (June 22, 1964), 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908, 1 A.L.R.3d 1205 and its effect on our prior decisional law. See State v. Thundershield, 83 S.D. 414, 160 N.W.2d 408, decided by this court on July 23, 1968. He appears to have admitted the statement because he felt on conflicting evidence and inferences there was a fact question to be decided by the jury on voluntariness of the statement[4] and not because he found it voluntary. Specifically he also instructed the jury if the officers did not give the Miranda warnings[5] before the statement

---

4. Pertaining to conflicts between the testimony of the prosecutor and sheriff the court said: "This, of course, is a fact question for the jury." After lengthy colloquy between the court and counsel, he said: "I'm going to admit the evidence and we can submit the question also to the jury as to the voluntariness." Also, "Incidentally, if there is a conflict on the facts it will be a question of fact for the jury and, of course, instruction will be given that if they feel that the requirements as instructed are not fully complied with that they may disregard and should disregard it."

5. In essence the instruction contained the four warnings set forth in Miranda v. State of Arizona, Ibid. See also State v. Connors, Ibid.

was made, it should not be considered unless appellant "knowingly and intelligently waived his right to remain silent and to be represented by an attorney and affirmatively agreed to answer questions or make a statement."

 Where voluntariness is contested after all of the proof of the state and the defendant has been submitted without the presence of the jury (1) the trial judge **must make his own finding as to whether the State has sustained the burden of proving** that the incriminating statement or confession is voluntary, and (2) if he finds it to be voluntary and hence admissible he will admit it in evidence without disclosing his own finding to the jury. The duty of the trial judge to make an independent determination as to voluntariness of an incriminating statement or confession is a constitutional requirement, Jackson v. Denno, supra, and responsibility for such determination cannot be shifted to the jury. This is true both under the orthodox rule and the Massachusetts rule. Under the former, the jury is not concerned with the admissibility of the statement or confession, but only with its credibility. Under the latter the jury is instructed to disregard the statement or confession if they find it was not voluntarily given.[6] Whether or not the Miranda warnings were given, and if so, whether or not they were knowingly and intelligently waived were fact questions basic to the issue of voluntariness and the trial judge was required to make his decision thereon. The record does not satisfy us that he made this determination, but on the contrary it strongly indicates that he did not and left the decision to the jury. This he could not do.

Accordingly, this case would ordinarily have to be remanded to the trial court for determination of the question of voluntariness under the guidelines of Jackson v. Denno, supra; however, for reasons to be stated we have concluded that the court erred constitutionally when it admitted the incriminating statement necessitating reversal and a new trial. We refer to some of the cases which cause us to come to this conclusion.

---

6. In State v. Thundershield, 83 S.D. 414, 160 N.W.2d 408, the orthodox rule was adopted.

In Massiah v. United States, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246, a federal prosecution, it was held incriminating statements deliberately elicited by federal agents from an accused after arraignment and while free on bail in the absence of his attorney was a deprivation of right to counsel under the Sixth Amendment and could not be constitutionally used as evidence against him in his trial.

Massiah was closely followed by Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977, and it was said where "the investigation is no longer a general inquiry into an unsolved crime but has begun to focus on a particular suspect, the suspect has been taken into police custody, the police carry out a process of interrogations that lends itself to eliciting incriminating statements, the suspect has requested and been denied an opportunity to consult with his lawyer, and the police have not effectively warned him of his absolute constitutional right to remain silent, the accused has been denied 'the Assistance of Counsel' in violation of the Sixth Amendment to the Constitution as 'made obligatory upon the States by the Fourteenth Amendment,' * * * and that no statement elicited by the police during the interrogation may be used against him at a criminal trial."

In Miranda v. State of Arizona, 384 U.S. 436, 444, 445, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694, after detailing required procedures on informing an accused of his rights before police interrogation, the court said: "The defendant may waive effectuation of these rights, provided the waiver is made voluntarily, knowingly and intelligently. **If, however, he indicates in any manner and at any stage of the process** that he wishes to consult with an attorney before speaking **there can be no questioning.** Likewise, if the individual is alone and indicates in any manner that he does not wish to be interrogated, the police may not question him. The mere fact that he may have answered some questions or volunteered some statements on his own does not deprive him of the right to refrain from answering any further inquiries until he has consulted with an attorney and there-

after consents to be questioned." (emphasis ours). 384 U.S. at 466, 86 S.Ct. at 1623: "The presence of counsel, * * * would be the adequate protective device necessary to make the process of police interrogation conform to the dictates of the privilege (to remain silent if he chose or to speak without any intimidation, blatant or subtle). His presence would insure that statements made in the government-established atmosphere are not the product of compulsion." 384 U.S. at 474, 86 S.Ct. at 1628: "If the individual states that he wants an attorney, the interrogation must cease until an attorney is present. At that time, the individual must have an opportunity to confer with the attorney and to have him present during any subsequent questioning." 384 U.S. at 475, 86 S.Ct. at 1628: "If the interrogation continues without the presence of an attorney and a statement is taken, a heavy burden rests on the government to demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to retain or appointed counsel. Escobedo v. State of Illinois, 378 U.S. 478, 490, n. 14, 84 S.Ct. 1758, 1764, 12 L.Ed.2d 977. This Court has always set high standards of proof for the waiver of constitutional rights, Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938), and we reassert these standards as applied to in-custody interrogation. Since the State is responsible for establishing the isolated circumstances under which the interrogation takes place and has the only means of making available corroborated evidence of warnings given during incommunicado interrogation, the burden is rightly on its shoulders."

■ Applying the constitutional principles which have evolved from these cases to the record before us we are of the opinion the statement was made in an in-custody interrogation and was not a volunteered statement. The proceeding had shifted from investigatory to accusatory, Escobedo v. State of Illinois, supra, and appellant was entitled to have a lawyer present during the interrogation, either retained or appointed, unless waived. If he requested a lawyer no interrogation could be conducted until a lawyer was present and any statement obtained after such request without the presence of a lawyer would not be admissible in evidence.

■ The burden was upon the state to demonstrate that appellant knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel. As stated supra, ordinarily this is a question for determination of the trial court. When, however, the admitted facts and showing fail to establish a waiver within guidelines and pronouncements of the highest federal tribunal, this court must say so as a matter of law and there is no need to remand the matter to the trial court for determination.

■ We are satisfied that appellant had reason to believe a lawyer had been retained for him when he appeared at McIntosh pursuant to the sheriff's direction and that the police officers knew prior to the purported interrogation that a lawyer had accompanied appellant and Smith to McIntosh for their expected arraignment. For some reason not apparent to this court the state chose not to arraign Smith. The testimony of the prosecutor without the presence of the jury when considered with other facts and circumstances viewed most favorably to the state, in our opinion, does not demonstrate a knowing and intelligent waiver of right to counsel before the interrogation. Hence the purported statement was constitutionally inadmissible.

The judgment is reversed and a new trial granted.

HANSON, P. J., and ROBERTS and RENTTO, JJ., concur.

BIEGELMEIER, J., concurs specially.

BIEGELMEIER, Judge (concurring in part).

I agree with as much of the opinion that concludes the trial court erred in not making a preliminary independent determination of the voluntariness of defendant's statement under the Jackson v. Denno decision and thus requires a remand to the trial court for that purpose. The majority here, however, does not follow this mandate of Jackson v. Denno but takes upon itself, as an appellate court, the function of deciding this question when it appears clearly to be one for the trial judge as to veracity, etc. under the guidelines of Jackson v. Denno, State v.

Thundershield and the opinion on this appeal. That expands and extends Massiah (statement made after arraignment and in absence of his attorney); Escobedo (statement made after suspect requested and was denied an opportunity to consult counsel and no effective warning was given) and the Miranda (no warning) series of cases. The citations of these opinions all appear in the majority opinion. The court's action here is contrary thereto insofar as it assumes the duty here and makes the finding and conclusion on the disputed testimony. I would remand the appeal for appropriate action under Jackson v. Denno.