STATE, Respondent v. JOHNSON, Appellant

(202 N.W.2d 132)

(File No. 11064. Opinion filed November 21, 1972)

**Ronald C. Aho,** Brookings, for defendant and appellant.

**Gordon Mydland,** Atty. Gen., **David Stanton,** Asst. Atty. Gen., Pierre, for plaintiff and respondent.

HANSON, Presiding Judge.

Defendant was charged with and found guilty of the crime of obtaining money and property under false pretenses. He was sentenced to serve eighteen months in the State Penitentiary concurrently with a prior sentence for a similar offense. On this appeal defendant asserts numerous errors mainly relating to the reception of evidence and instructions to the jury.

The evidence shows that on July 11, 1971 a check drawn on the Peoples State Bank of DeSmet in the amount of $15 was issued to the Holiday Station Store in Brookings, South Dakota. The check bore the signature of Ronald Johnson. It was received by David Biggar, an employee of the store, who deposited the check along with the other daily receipts. Subsequently, the check was returned marked "No Account" and this prosecution followed.

Prior to trial defendant moved to suppress the testimony of Gordon Ribstein, Sheriff of Brookings County; Floyd LeVake, State Parole and Probation Officer; and David Biggar. After an evidentiary hearing was held the trial court denied the motion and such witnesses were allowed to testify at the trial over defendant's objections.

 Floyd LeVake, testified he went to defendant's home in Erwin, South Dakota on July 31, 1971 to question him about the check issued to the Holiday Station. The two conferred in the yard outside defendant's home during which defendant admitted issuing the check but claimed it had been paid off. At the time defendant was under the supervision of the Board of Pardons and Paroles according to the terms of a suspended sentence.[1] Because of this relationship defendant contends he was subjected to a custodial police interrogation and was entitled to a warning of his rights as required in Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, prior to any questions concerning the check.

---

1. The terms of defendant's suspended sentence provided, among other things, he would be law abiding and not write any more bad checks.

■ Miranda warnings do not have to be given in all interrogations. They must be given prior to "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." Miranda v. Arizona, supra. Neither of these compelling factors is present here. LeVake was not a law enforcement officer within the spirit or meaning of Miranda, People v. Ronald W., 24 N.Y.2d 732, 302 N.Y.S.2d 260, 249 N.E. 2d 882, and he did not take, or have, defendant in custody.

It is the duty of a law enforcement officer to detect crime and enforce the criminal laws of this state. SDCL 23-3-27. The duty of a probation officer is the antithesis of this. His duty begins when the peace officer's duty ends. He does not have a peace officer's broad power of arrest. He has only the limited authority to take and detain a probationer when the terms of the suspension or probation have not been observed or when it is necessary to prevent escape or enforce discipline. SDCL 23-57-12. Otherwise he has supervisory powers only to help in the reformation and rehabilitation of convicted persons on probation, parole, or suspended sentences. SDCL 23-57 and 23-58. As the Florida court concluded in a similar case, "if upon every visit or contact with the probation officer the probationer is entitled to a [Miranda] warning then the relationship between the probation officer and the probationer would be a strained one indeed and the purpose of probation would be materially affected." Nettles v. State, Fla. App., 248 So.2d 259. [2]

■ Sheriff Ribstein testified when he arrested defendant he advised him of his rights by reading from a card containing the Miranda warnings. Defendant acknowledged he knew and understood those rights. Thereafter, in a conversation, defendant admitted issuing the check in question. Defendant's objection to this testimony relates to the form of the warnings given by the sheriff who advised defendant, "You have the right to remain

---

2. Cf. State v. Lekas, 201 Kan. 579, 442 P.2d 11, in which the Kansas court came to the opposite conclusion where the parole officer and a police officer took defendant from his home to the courthouse where he was questioned by the parole officer who was statutorily given the same police powers as other peace officers.

silent" rather than "You have the continuing right to remain silent" as set forth in the codified version of the Miranda warnings appearing in SDCL 23-44-2(1). This is a trivial objection which is fully answered in Coyote v. United States, 10 Cir., 380 F.2d 305 as follows:

> "Surely Miranda is not a ritual of words to be recited by rote according to didactic niceties. What Miranda does require is meaningful advice to the unlettered and unlearned in language which he can comprehend and on which he can knowingly act. We will not indulge semantical debates between counsel over the particular words used to inform an individual of his rights. The crucial test is whether the words in the context used, considering the age, background and intelligence of the individual being interrogated, impart a clear, understandable warning of all his rights."

During the course of his testimony David Biggar was permitted to make an "in court" identification of defendant as the person who issued the "no account" check. Defendant contends this evidence should have been suppressed as it was tainted by an unconstitutional pretrial one-man "lineup" or "showup".

The record in this respect shows a complaint was filed on July 30, 1971 and defendant was arrested on July 31, 1971. An attorney was appointed to represent him on August 6, 1971 and a preliminary hearing was held on August 16, 1971, at which Biggar testified. It further appears from the evidentiary hearing held in response to defendant's motion to suppress that prior to the preliminary hearing Biggar told the State's Attorney he wasn't sure he remembered Mr. Johnson and he couldn't give a description of the man. The State's Attorney then arranged to have defendant exhibited to Biggar on August 13, 1971. This was accomplished by having the Deputy Sheriff bring defendant over to the courthouse from the jail and the two walked past Biggar. This "showup" was held without notice to and in the absence of defendant's appointed counsel.

The effect of an impermissible pretrial confrontation was stated in Utsler v. State, 84 S.D. 360, 171 N.W.2d 739: "It is

now settled law that an in court identification by a witness to whom an accused was exhibited before trial without notice to and in the absence of counsel must be excluded unless it can be established that such evidence had an independent origin or that error in its admission was harmless. United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149; Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178." A suspect's right to counsel at a lineup does not attach until after "adversary judicial proceedings have been initiated against him." Kirby v. Illinois, 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411. See also State v. Ironshell, 86 S.D. 100, 191 N.W.2d 803.

In Kirby v. Illinois, supra, the court explained the initiation of judicial criminal proceedings "is far from a mere formalism. It is the starting point of our whole system of adversary criminal justice. For it is only then that the Government has committed itself to prosecute, and only then that the adverse positions of Government and defendant have solidified. It is then that a defendant finds himself faced with the prosecutorial forces of organized society, and immersed in the intricacies of substantive and procedural criminal law. It is this point, therefore, that marks the commencement of the 'criminal prosecutions' to which alone the explicit guarantees of the Sixth Amendment are applicable."

In the present action the one-man lineup was a critical stage of the prosecution and defendant's right to have counsel present had attached. A formal complaint had been filed against him. He had been arrested and was in custody. A preliminary examination had been held and an attorney had been appointed to represent him. Under the circumstances, his out-of-court exhibition to the witness Biggar without notice to and in the absence of counsel was a violation of his constitutional right to counsel.

 Despite Biggar's original doubt and uncertainty as to the identity of Ronald Johnson the trial court ruled his in-court identification had an independent origin untainted or unaffected by the pretrial confrontation. There is evidence in the record to support such conclusion. In any event it was merely cumulative evidence and its admission constituted harmless error as defend-

ant's identity was not a material factor in issue in view of defendant's two separate and admissible admissions of guilt. As the United States Supreme Court stated in Schneble v. Florida, 405 U.S. 427, 92 S.Ct. 1056, 31 L.Ed.2d 340, "unless there is a reasonable possibility that the improperly admitted evidence contributed to conviction, reversal is not required."

We have examined and considered defendant's other assigned errors relating to his motion to dismiss the Information and the settlement of instructions. Finding no merit in any of them the judgment appealed from is affirmed.

All the Judges concur.