STATE, Respondent v. FALLER, Appellant

(227 N.W.2d 433)

(File No. 11357. Opinion filed March 26, 1975)

Harry W. Christianson, Asst. Atty. Gen., Pierre, for plaintiff and respondent; Kermit A. Sande, Atty. Gen., Pierre, Gerald E. Bollinger, State's Atty., Sanborn County, on the brief.

Le Roy S. Lassegard, Merle D. Lewis, Mitchell, for defendant and appellant.

DOYLE, Justice.

This case involves the admissibility of a confession obtained after a polygraph examination. The record reveals that defendant had been questioned twice previous to the examination—once three days prior to the polygraph test and again the day before the test. He was given his Miranda warnings on both previous occasions but was not in any way restrained or in custody.

On the day of the examination the defendant voluntarily went from Woonsocket to the Brown Audit Company, a polygraph company in Sioux Falls, with Carl Regynski, Sanborn County Sheriff, and Jerry Lindberg, Special Agent for the South Dakota Division of Criminal Investigation. Upon arriving defendant was asked to fill out certain forms including a waiver agreement protecting Brown Audit Company from liability. He was taken to the examination room by Leo Brown and given the polygraph examination while Sheriff Regynski and Agent Lindberg waited in another room.

When the test was completed, Brown indicated that the defendant was having difficulty passing. Defendant admitted that he had lied to Regynski and Lindberg earlier about his

whereabouts on the night of the crime but that he had not lied in denying guilt. Brown responded that another set of questions verifying defendant's claim could be compiled. Defendant then made several statements to Brown indicating that he was indeed guilty. [1] Brown left the room and told Regynski and Lindberg that defendant "was having problems" with the test. Lindberg then went to defendant, gave him his rights and received both an oral and written confession on the basis of which the state eventually obtained a conviction.

Defendant maintains that his confession cannot be considered voluntary and admissible by this court unless he received his Miranda warnings before and in connection with the lie detector examination. We agree.

1. "A * * * Just out of the clear blue he looked me right in the eye and said, you think I did it, don't you. I said, I don't know, the only thing I know is you haven't passed the polygraph test, and I am sure if what you are telling us is the truth, we can run another chart and verify it out. The next thing that he told me, he said, what would happen to me if I told you I did it. He said, I don't want to go to the penitentiary. I told him, I can't make any promises, I am not a police officer or prosecuting attorney, or defense attorney. If he was involved in it, I don't think people should be out shooting people, and should get it straightened out. The next thing I recall he told me he did it.

"Q Then what?

"A I asked him, where did you get the gun, and he told me some people he had stolen the gun from. I said, where did you have the gun before the shooting. He said he had it hid behind some big water spools in behind the Warner garage. This garage is behind their home as I understood it. I said, where is the gun now. He told me he threw it in Prior Lake which is an artesian water, as I understand it. I asked him why, did he know the people. He said, no, that he didn't know the people, in fact he didn't think he could shoot them. He watched them out through one of the windows of the house for about two hours that Saturday evening and he said he pulled the gun up and he didn't think he could pull the trigger, and by gosh he did., The fellow fell over in the chair and the wife ran over to see what was wrong. And he ran around to the side window, he said, I watched there for a minute, I thought to myself, by gosh I'd better shoot her too or she'll call the cops and I'll be in trouble. So he went back to the window, the original window he shot at, and shot the lady.

"Q What did you do after the conversation?

"A I asked him if he was willing to talk to the police about the conversation, and he said he was.

"Q Then what?

"A I went to the other room and told Mr. Lindberg and Mr. Regynski Larry wanted to talk to them, I didn't elaborate anything further than that."

■ There is little doubt in our minds that Brown's questioning here constitutes state action. He is bound by the restrictions of the federal constitution just as full-time federal and state law enforcement officers would be. State v. Cullison, 1974, Iowa, 215 N.W.2d 309. Nor do we doubt that the investigation had gone past preliminary stages to the point where the police had focused on defendant as a prime suspect.[2] Miranda v. Arizona, 1966, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, 10 A.L.R.3d 974; Escobedo v. Illinois, 1964, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977.

In Schneckloth v. Bustamonte, 1973, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854, the United States Supreme Court, after reviewing a number of previous decisions, said:

"The significant fact about all of these decisions is that none of them turned on the presence or absence of a single controlling criterion; each reflected a careful scrutiny of all the surrounding circumstances. * * * While the state of the accused's mind, and the failure of the police to advise the accused of his rights, were certainly factors to be evaluated in assessing the 'voluntariness' of an accused's responses, they were not in and of themselves determinative."

The situation a lie detector test presents can best be described as a psychological rubber hose. A defendant, when suddenly faced with the impersonal accuracy of a machine, may believe it is safer to confess and place himself at the mercy of the law rather than lie to the examiner and sacrifice any possibility of leniency. Under circumstances such as this we find it difficult to believe that a confession is voluntary unless it can be shown the defendant knows his constitutional rights and knows that his interests cannot be harmed by exercising those rights. When asked the right questions a defendant may confess if he believes he can be convicted by his own silence.

---

2. Sheriff Regynski indicated at the suppression hearing that "What I was asking Larry was practically the same questions I asked him Sunday afternoon, as far as car thefts. I wasn't interested in that at all. That was the furthest thing from my mind." Earlier Sheriff Regynski maintained that the Sunday questioning concerned only the crime involved in this case, a shooting and not car thefts.

State v. Cullison, supra, is remarkably close to the case at hand. The defendant there was advised of her rights during questioning the day before the examination. On the day of the test she was driven from Council Bluffs, Iowa, to the office of a private polygraph examiner in Omaha, Nebraska. She was given her rights again during this trip.

The defendant made inculpatory statements to the examiner without receiving her Miranda warnings. The assistant state's attorney was then called in and she made the same confessions to him. She was then returned to Council Bluffs where she was advised of her rights. The Iowa Supreme Court held that the defendant's statements were properly suppressed.

While the confession actually used against defendant in this case was obtained after Agent Lindberg gave him the proper warnings, we conclude that it is tainted by the previous statements and cannot be considered voluntary. Westover v. United States, 1966, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, 10 A.L.R.3d 974. Once a confession is made, we do not believe belated warnings can erase a defendant's belief that the damage done is irreversible and that further statements will help his chances for leniency.

 We are, however, not yet prepared to suppress the defendant's confession in that the record before us is inconclusive on whether the defendant received his Miranda warnings before taking the polygraph test. At the suppression hearing when Mr. Brown was asked what defendant said after the test, defense counsel objected on the grounds that any statements were inadmissible since there was no showing that defendant had been given his warnings. The objection was overruled, and the tone was set for the rest of the proceedings that any warnings in connection with the examination were irrelevant. Thus, upon this record in which there are no facts to determine whether the defendant received his Miranda warnings before the examination, we remand this case to the trial court to determine whether defendant was given his warnings before submitting to the polygraph examination and, if so, whether he understood such

warnings. SDCL 15-26-26[3] and 15-30-2,[4] we believe, give this court the authority to make such an order. Furthermore, since this court has the authority under SDCL 23-51-20 to reverse and remand for a new trial where the clarification we seek would certainly take place, we see no prejudice to either party in making this order. The other assignments of error are without merit, and clarification of this one issue may save the state and defendant the considerable task of a new trial.

We remand to the trial court for an evidentiary hearing to determine if the defendant was properly advised of his Miranda rights before being examined by Mr. Brown, and upon a finding by the trial court that the defendant was properly so advised the conviction of the defendant is affirmed.

Upon a finding by the trial court that the defendant was not properly advised of his Miranda rights the defendant's conviction is reversed and a new trial granted.

DUNN, C. J., and WINANS, J., concur.

WOLLMAN, J., concurs specially.

COLER, J., dissents.

WOLLMAN, Justice (concurring specially).

I agree that Mr. Brown was acting 'as an 'agent for the law enforcement officers and that he, or one of the officers, was bound to warn defendant of his Miranda rights before the polygraph examination was conducted. Although the state had ample opportunity to establish that the warnings were given, the record does not reveal that they were in fact given. I would reverse the conviction outright.

---

3. SDCL 15-26-26: "By its judgment, the Supreme Court may reverse, affirm, or modify the judgment or order appealed from, and may either direct a new trial or the entry by the trial court of such judgment as the Supreme Court deems is required under the record."

4. SDCL 15-30-2: "Upon an appeal from a judgment or order, the Supreme Court may reverse, affirm, or modify the judgment or order, and may direct the entry of such judgment or order as the court deems required by the record, as to any or all of the parties; and may, if necessary or proper, order a new trial; and if the appeal is from a part of the judgment or order, may reverse, affirm, or modify as to the part appealed from." SDCL 23-1-3 makes these statutes applicable to criminal proceedings.

COLER, Justice (dissenting).

Granting the issue presented is not the same, the facts which were presented describing the procedure followed by the same polygraph examiner and also resulting in a confession which followed earlier Miranda warnings, it is impossible for me to discern a clear difference between this case and that of State v. Adkins, 1975, 88 S.D. 571, 225 N.W.2d 599. The trial court fully complied with the requirements of Jackson v. Denno, 1964, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908, 1 A.L.R.3d 1205; State v. Thundershield, 83 S.D. 414, 160 N.W.2d 408; State v. Seal, 1968, 83 S.D. 455, 160 N.W.2d 643.

In addition to a full evidentiary hearing, the trial court had the benefit of the transcript of the preliminary hearing covering the same subject matter of compliance with the Miranda decision and determination of whether the statements made by the defendant were voluntary. On that record the trial court properly entered Findings of Fact clearly supported by that record.*

---

* In part the findings of the trial court upon which the order declaring the confession admissible was based upon were:
"II.
That the defendant, Larry Gene Faller, had sufficient intelligence to understand the rights explained to him by the law enforcement officers.
III.
That the defendant, Larry Gene Faller, was advised of his rights on several ˙. occasions by law enforcement officers as they testified prior to his giving the incriminating admissions and written statement in question.
IV.
That the defendant, Larry Gene Faller, knew that he was going to Sioux Falls for the purpose of taking a lie detector test on the alleged facts of the shooting in question. That no trickery was employed by law enforcement officers.
V.
That the incriminating admissions and written confession of the defendant, Larry Gene Faller, were intelligently and voluntarily made and the rights of said defendant under Miranda v. United States and SDCL 23-44-2 were observed by the officials.
VI.
That the requirements as set forth by the South Dakota Supreme Court in the cases of State v. Johnson, 1972, 87 S.D. 43, 202 N.W.2d 132; State v. Thundershield, 83 S.D. 414, 160 N.W.2d 408 (1968); and State v. Kiehn, 86 S.D. 549, 199 N.W.2d 594 (1972) have been met by the State of South Dakota."

The majority opinion adds a new dimension to the Miranda warning citing as authority State v. Cullison, 1974, Iowa, 215 N.W.2d 309. The Iowa court, in that decision affirming the trial court's suppression of a confession, appears to establish a requirement that the forms used by polygraph examiners must restate the Miranda warnings. This ignores the general rule that the questions of whether a confession is voluntary and whether there has been a knowledgeable waiver of constitutional rights should be determined from the totality of the circumstances. To place such emphasis on repetitive statements of constitutional rights borders on ritual and undue emphasis of the trivial, placing form over substance and ignoring the true intent of the rule. State v. Bonrud, 1973, 87 S.D. 130, 203 N.W.2d 793; State v. Johnson, 1972, 87 S.D. 43, 202 N.W.2d 132.

The better and widely accepted rule, I submit, is found in People v. Hill, 1968, 39 Ill.2d 125, 233 N.E.2d 367, cert. denied, 1968, 392 U.S. 936, 88 S.Ct. 2305, 20 L.Ed.2d 1394, as follows:

> "It should be made clear that once *Miranda's* mandate was complied with at the threshold of the questioning it was not necessary to repeat the warnings at the beginning of each successive interview. To adopt an automatic second-warning system would be to add a perfunctory ritual to police procedures rather than providing the meaningful set of procedural safeguards envisioned by *Miranda.*" (cite omitted)

I would affirm on the basis that "there was ample evidence to sustain the trial judge's finding that the confession was voluntary beyond a reasonable doubt." State v. Aschmeller, 1973, 87 S.D. 367, 209 N.W.2d 369.

The majority opinion, citing Westover v. United States, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, 10 A.L.R.3d 974, declares the confession "is tainted by the previous statements and cannot be considered voluntary." This position renders a further hearing on the question of timely Miranda warnings meaningless.