267 N.W.2d 832 (1978)
In the Matter of V. R., alleged delinquent child.
No. 12264.
Supreme Court of South Dakota.
Argued February 15, 1978.
Decided July 13, 1978.
*833 Judith Meierhenry of Meierhenry, DeVany & Krueger, Vermillion, for appellant V. R.
Peter H. Lieberman and Leann Larson Finke, Asst. Attys. Gen., Pierre, for respondent State of South Dakota; William J. Janklow, Atty. Gen., Pierre, on brief.
DUNN, Chief Justice (on reassignment).
V. R. appeals from an order of the circuit court which adjudicated him a delinquent child and committed him to the Youth Forestry Camp until he attained the age of twenty-one or was discharged by the Board of Charities and Corrections. We affirm.
On April 17, 1977, a Vermillion police officer contacted V. R.'s mother and requested permission to talk to V. R. concerning the burglary of R-Pizza which had occurred the prior evening. The mother advised the officer that V. R. was not at home and that she was unable to leave because her infant child was asleep. About one hour later, the police officer found V. R. near his residence and "asked him if he would come to the Police Department."
V. R.'s discussion with the police took place from 5 p. m. to 7:30 p. m. On arrival at the station, he was advised of his "Miranda rights" and his right to have his parents present during any questioning. After obtaining an unrecorded statement, the officer drove V. R. to several locations in Vermillion where tape decks taken in automobile burglaries and a bag of marijuana were recovered. The procedure followed was that the officer would let V. R. out of the car and arrange to meet him at a certain time and place, thus letting the juvenile out of his sight several times during the period they were together. V. R. was given his choice of eating supper with the officer or at home, and he chose to eat with the officer. Two recorded confessions were obtained later, after which V. R. was allowed to return home. He was subsequently charged with the burglary of R-Pizza, two counts of burglary involving tape decks, two counts of grand larceny and possession of marijuana.
Following a hearing on the juvenile's motion to suppress the confession and the physical evidence seized as a result thereof, the court ruled both were admissible. The juvenile was convicted of all counts solely on the basis of his confession and the evidence seized as a result thereof. He appeals, contending that the admission of the confession and physical evidence violated the requirements of SDCL 26-8-19.1, 26-8-19.2, 26-8-19.3, and his privilege against self-incrimination and his right to counsel.
We agree with the state's contention that the juvenile was not "in custody" and therefore the state had no burden of showing a knowing, intelligent and voluntary waiver of his right to counsel or privilege against self-incrimination. Oregon v. Mathiason, 1977, 429 U.S. 492, 97 S.Ct. 711, 50 L.Ed.2d 714; People v. Wipfler, 1977, 68 Ill.2d 158, 11 Ill.Dec. 262, 368 N.E.2d 870.
In Mathiason, supra, the defendant voluntarily appeared at the police station in response to a note left at his apartment. He was told that he was not under arrest but that the police believed he had been involved in a burglary. The police also falsely stated that the defendant's fingerprints had been found at the scene of the crime. The defendant confessed after sitting in the room for a few minutes. He was then advised of his Miranda rights and gave a taped confession. The police allowed him to return home after the conversation, informing him that the district attorney would determine whether to charge him with the crime. The United States Supreme Court reversed the Oregon Supreme Court's suppression of the confession, concluding that "there is no indication that the questioning took place in a context *834 where respondent's freedom to depart was restricted in any way." 429 U.S. 495, 97 S.Ct. 714, 50 L.Ed.2d 719.
Similarly, in Wipfler, supra, the Illinois Supreme Court was confronted with a situation where a juvenile arrived at the police station pursuant to a phone call from the police asking his mother to send him to the station. The police chief, who had been somewhat of a "father figure" to the juvenile, urged the youngster to tell the truth, and detectives then proceeded to question him for approximately an hour about a burglary. As in this case, the juvenile returned several of the stolen items to the police and was then allowed to return home overnight. The Illinois Supreme Court held that the statements were not the result of a custodial interrogation.
In this case, there is no evidence of threats or coercion of the juvenile; a large part of the time was spent with the juvenile being out of the sight of the officer; the juvenile was given the option of going home for supper; and he was allowed to return home after the conversation with the officer. These facts convince us that this was not the sort of coercive environment to which the Miranda principle applies and that the juvenile was not in "custody or otherwise deprived of his freedom of action in any significant way." Miranda v. Arizona, 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694, 706.
Since SDCL 26-8-19.1 through 26-8-19.3 deal with the situation of a juvenile being "in temporary custody," our conclusion that V. R. was not in custody renders these statutes inapplicable. Giving due consideration to the trial court's ability to personally observe the evidence and demeanor of the witnesses, especially that of V. R., and in view of our decision that the questioning was not a custodial interrogation, we affirm the trial court's order of adjudication of V. R. as a delinquent juvenile.
WOLLMAN and MORGAN, JJ., concur.
ZASTROW and PORTER, JJ., dissent.
ZASTROW, Justice (dissenting).
I dissent.
The majority concludes that V. R. was not "in custody" and that therefore the state was not required to show a voluntary, knowing and intelligent waiver of his right to counsel and privilege against self-incrimination under the rationale of Oregon v. Mathiason, 429 U.S. 492, 97 S.Ct. 711, 50 L.Ed.2d 714 (1977), and People v. Wipfler, 68 Ill.2d 158, 11 Ill.Dec. 262, 368 N.E.2d 870 (1977).
In Oregon v. Mathiason, supra, the United States Supreme Court reasoned:
In the present case, however, there is no indication that the questioning took place in a context where respondent's freedom to depart was restricted in any way. He came voluntarily to the police station, where he was immediately informed that he was not under arrest. At the close of a one-half hour interview respondent did in fact leave the police station without hindrance. It is clear from these facts that Mathiason was not in custody `or otherwise deprived of his freedom of action in any significant way.' 429 U.S. at 495, 97 S.Ct. at 714, 50 L.Ed.2d at 719.
The facts of this case differ significantly in the pivotal factors which were held to establish the lack of custody in Mathiason and Wipfler. In Mathiason and Wipfler, the police did not have probable cause to arrest the defendants. Here, the officer testified that he had more than enough information to arrest V. R.
In Mathiason and Wipfler the defendants went to the police station in response to a telephone call and a note. Here V. R. was sought out by the police officer who advised him to get into the police car, advised that he was in trouble and driven to the police station.
In Mathiason the defendant was advised that he was not under arrest and was free to leave and was in fact allowed to leave. Here, V. R. was not advised he was not "under arrest" or free to leave and he was not allowed to leave until the officer was advised to release him by the court service *835 worker. The officer stated that V. R. was "probably" under the impression that he was not free to leave. In Wipfler, the defendant was interviewed only as "an important witness." Here, V. R. was interviewed as the only suspect in a burglary.
The majority finds great significance in the fact that V. R. was allowed to leave the presence of the officer to retrieve the stolen items. This came after the confessions and as a result of a "deal" between the officer and V. R., the exact nature of which does not appear in the record. Likewise, I find no evidence that V. R. was given the option of eating at home, rather the mother was advised that V. R. would be given a meal at the jail because the officer wished to question him more.
However, I do not feel that this "freedom" of the juvenile to leave after the first confession is of that substantial importance. It appears that from the time the officer located V. R., directed him to get into the police car and drove him to the police station and until after the confessions were first obtained, the officer had no intent to, and would not, allow V. R. to leave his presence. That conduct indicates to me that V. R. was not only "otherwise deprived of his freedom of action in any significant way" but was also "in custody at the station." Miranda v. Arizona, 384 U.S. 436, 477, 86 S.Ct. 1602, 1629, 16 L.Ed.2d 694, 725 (1966); Mathis v. United States, 391 U.S. 1, 88 S.Ct. 1503, 20 L.Ed.2d 381 (1968); Orozco v. Texas, 394 U.S. 324, 89 S.Ct. 1095, 22 L.Ed.2d 311 (1969).
I would therefore hold that the burden was upon the state to prove beyond a reasonable doubt that the confessions were given after a voluntary, knowing and intelligent waiver of V. R.'s right to counsel and privilege against self-incrimination. State v. Thundershield, 83 S.D. 414, 160 N.W.2d 408 (1968); State v. Seal, 83 S.D. 455, 160 N.W.2d 643 (1968); see also 29 Am.Jur.2d Evidence §§ 543, 589 et seq.; 22A C.J.S. Criminal Law § 732 et seq.; Annot., 87 A.L.R.2d 624; 19 Am.Jur. Proof of Facts, "Waiver of Rights Under Miranda", pp. 1-126.
PORTER, Justice (dissenting).
The people express their will through the laws enacted by the legislature. Conway v. Humbert, 82 S.D. 317, 145 N.W.2d 524 (1966).
In SDCL 26-8-19.3 the legislature expressed the public policy of this state concerning police detention of children. This statute provides:
A child shall not be detained by law enforcement officials any longer than is reasonably necessary to obtain his name, age, residence, and other necessary information and to contact his parents, guardian, or custodian, and to deliver him thereto, or to the place of detention.
In this case the police officer, acting without a warrant, took the juvenile to the police station. The officer did not then contact the parents as the statute requires. Instead, the juvenile was detained in the custody of the officer for the next two and one-half hours.
A parent whose child has been detained by police at the police station is entitled to prompt police notice of that important fact. Recognizing the deep significance to both parent and child of such a family crisis, the legislature has by statute directed that prompt notice of the detention be given.
No attempt was made here to give the required notice after the juvenile was detained. Thus we are not confronted with the question of the effect of a prompt, good faith, but unavailing effort by the police to comply with this statute.
SDCL 26-8-19.3 is the legislative recognition of a fundamental parental right. The legislative intent will be frustrated if the courts fail to give effect to the statute. Who will obey the statute in the future if we condone noncompliance here.
For the reasons above stated, and as set forth in the separate dissent of Justice Zastrow, the motion to suppress should have been granted.